1

2

3

___ FILED    ___ ENTERED
___ LODGED    ___ RECEIVED

NOV 05 2010    JS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY



10-CV-01798-CMP

# THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON AT TACOMA

MARIA VALENTINA PAVINO,    )
)
PLAINTIFF,    )
)
v.    )
)
DEUTSCHE BANK TRUST COMPANY    )
AMERICAS, AS TRUSTEE FOR RALI    )
SERIES 2007-QH8 TRUST,    )
)
DEFENDANT.    )
_____    )

No. **10-CV-1798 RSL**

**VERIFIED COMPLAINT FOR
QUIET TITLE**

**JURY TRIAL DEMANDED**

The undersigned Complainant, MARIA VALENTINA PAVINO, an unmarried woman, hereinafter

**"Plaintiff"**, HEREBY states that Plaintiff is of legal age and competent to state on belief and

personal knowledge the facts set forth herein as duly noted below are true, correct, complete

and presented in good faith in the form of this **VERIFIED COMPLAINT FOR QUIET TITLE** because

of a claim against the Plaintiff's real property asserted by DEUTSCHE BANK TRUST COMPANY

AMERICAS, hereinafter "Defendant", is the 'trustee" of RALI SERIES 2007-QH8 TRUST in

regards to an alleged foreclosure of an alleged mortgage Loan obligation allegedly secured by a

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 1 of 38

**Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034**

SG437606/Summons Iss.

DEED OF TRUST described below as follows (all emphasis may be considered as added):

## PARTIES AND VENUE

1. PLAINTIFF, in statutory capacity, is a resident of **King** County, Washington and is established in good faith as an Inhabitant of Washington state in her private corporeal capacity, having a paramount security interest over the PLAINTIFF and the Subject Property, having claims both registered and unregistered whose mailing address is:

   **13409 129th PL, NE, Kirkland, WA 98034**

2. Plaintiff(s), is the party of record with exclusive possessory rights to the below described Subject Property, according to the official records of **King** County, Washington.

3. Defendant is the trustee of the  RALI SERIES 2007-QH8 TRUST;

4. Defendant's Registered Agent is CORPORATION SERVICE COMPANY, 300 Deschutes Way. SW, STE 304, Tumwater, WA 98501 accepts service for the Defendant via AURORA LOAN SERVICES, LLC, Servicer;

5. The subject property is located in **King** County, Washington and is legally described as:

   > Lot 200, Firloch No. 7, according to the plat thereof recorded in Volume 97 of Plats, page 60, records of King County, Washington. Situated in the County of King, State of Washington.

   The Subject Property has an **Assessor's Parcel Number: 2558660280** and is also commonly known as: **13409 129th PL, NE, Kirkland, WA 98034**.

## JURISIDICTION

VERIFIED COMPLAINT
FOR QUIET TITLE

Page  2 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

6. PLAINTIFF is proceeding without assistance of counsel unschooled in law, *in propria persona*, requesting the court accept direction from *Haines v. Kerner*, 404 U.S. 519 (1972), *Boag v. MacDougall*, 545 US 360 (1982), *Puckett v. Cox* 456 F2d 233 (1972 Sixth Circuit USCA), and *Conely v. Gibson*, 355 US 41 at 48(1957), wherein the court has directed those who are unschooled in law making pleadings shall have the court look to the substance of the pleadings rather than the form.

7. The jurisdiction of this Court to hear this claim is per United States Code (USC) Title 28, Section 1331, Federal Question; and the Constitution for the United States of America, Article III, §§ 1,2.

8. The Amount in controversy exceeds $75,000.00.

9. Jurisdiction arises under 42 USC § 1963 et seq. as well as the Constitution of the United States and in particular the 7th amendment as this is a "suit at common law".

10. Jurisdiction is also founded upon Diversity. This is a case that arises under Article 4, section 4 of the national Constitution.

11. Thirteenth and Fourteenth Amendments to the national Constitution regarding involuntary servitude, enticement to slavery and other civil rights matters.

12. Title 18 USC regarding fictitious obligations, mail fraud and wire fraud.

13. TILA - Truth in Lending Act (16 USC § 1601), HOEPA - Home Ownership Equity Protection Act (12 CFR 226.32 et. seq.), RESPA - Real Estate Settlement Procedures Act (12 USC § 2601).

14. Title 12 USC § 1813 for definition of a deposit and other provisions of Title 12 USC and Title 18 USC; 12 U.S.C. 1813(i)(1); 12 U.S.C. 1813n (GAAP).

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

15. Title 12 CFR § 226.32 commonly known as 'Section 32' of Regulation Z, which implements the TRUTH AND LENDING ACT (TILA).

16. This matter also includes a Common Law Claim for [past] financing, repair, maintenance, improvement, or performance of an obligation of the subject property regarding corporeal substance of Plaintiff's sweat equity grounded in international and Common Law jurisdiction pursuant to RCW 4.04.010.

## FACTS

17. Plaintiff(s) purchased the Subject Property on or about **March 28, 1994** as evidenced by a Deed recorded at **King** County, Washington Auditor's file number **199403313538** (copy attached as Exhibit "**A**") and sees no proof to the contrary; and,

18. Plaintiff(s) believe someone other than the real party in interest with access to confidential records, instigated the non-judicial foreclosure without the real party in interest's knowledge, falsely claiming the Subject Property and falsely claiming to be the owner/holder of the alleged mortgage obligation; and, falsely claiming 'standing' by use of such titles as Trustee, Assignee, Nominee, Beneficiary, etc.; and, falsely claiming that Pooling and Servicing Agreements, industry standards, rules, guidelines or other industry-authored writings supersede the law; manipulating account records; falsely reporting a default when it is the *servicer* creating the default; refusing payment in order to create a default; ignoring Borrower' complaints and "qualified written requests"; violating numerous laws and regulations; falsifying records and documents; committing fraud by stating they are the Holder and Owner of the Note when in fact they likely are not; forging documents; creating fictitious documents; triggering the

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 4 of 38

**Maria Valentina Pavino, Plaintiff**
**13409 129th Place, NE**
**Kirkland, WA 98034**

terms of the Deed of Trust without the debt instrument; not adhering to the terms of the loan documents; creating additional false deficiencies through a variety of questionable practices; committing perjury through misrepresentations; withholding or redacting discovery of evidence; conjuring events that never happened while refusing to provide supporting documentation; payoffs; electronic surveillance; wire fraud/mail fraud; conspiracy; fraud in the inducement, unjust enrichment, embezzlement; racketeering, abuse of process, violation of ethics; grand theft; extortion; tax fraud; public corruption; notary fraud; evidence tampering; theft of government services; perjury; felonious influence of public officials; money laundering; insurance fraud; securities fraud; violations of Constitutional and Civil Rights; predatory lending; etc.; (See Exhibit "B" Washington Attorney General's letter to Foreclosure Trustee) as follows:

19. **"Fraud destroys the validity of everything into which it enters. It affects fatally even the most solemn judgments and decrees."** *Ira Nudd v. George Burrows* 91 U.S. 426 at 440 (1875);

*Washington Deed of Trust Act is Unconstitutional*

20. The Federal Courts have jurisdiction over the Washington Deed of Trust Act (RCW 61.24), hereinafter "Act", as follows:

21. The Act is unconstitutional because it does not provide equal access to a remedy for both Borrower and Lender; it provides an advantageous streamline *'easy'* non-judicial remedy for Lenders but no equal counter remedy for Borrowers whose only remedy is an expensive, complicated judicial defense ;

22. A fraudulent trustee's deed emerges pure and clean, conveying property to purchasers;

23. The Act promotes predatory lending, economic oppression, involuntary servitude and

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 5 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

loans made pursuant to the Act are enticements to slavery;

24. The Act vests more power in the trustee than the legislature has to give and functions much the same as extortion;

25. The Act attempts to make a 'safe haven' for all of the fraud, perjury, misconduct and violations of law by declaring that, "[w]hen delivered to the purchaser, the trustee's deed shall convey all of the right, title, and interest in the real and personal property sold at the trustee's sale which the grantor had or had the power to convey at the time of the execution of the deed of trust, and such as the grantor may have thereafter acquired. If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter. After a trustee's sale, no person shall have any right, by statute or otherwise, to redeem the property sold at the trustee's sale";

26. To complete the debauchery, various government investment and retirement pension funds often invest in mortgage backed securities benefiting from the *'ease'* of foreclosure plunders creating a conflict of interest, *quid pro quo,* rendering justice and due process of law impossible given the natural tendency to protect one's investments;

27. Plaintiff **objects** to the Act and **denies** the  Act is a certified constitutional act and sees no proof to the contrary;

28. Plaintiff is granting no waiver for the required Deed of Trust Act;

*Declaration of Default*

29. There is no evidence the Beneficiary of the alleged obligation, in fact, declared a default;

30. The Defendant, as trustee of the RALI SERIES 2007-QH8 TRUST, is not the Beneficiary

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

and has never paid consideration for any right, title or interest in the Subject Property, Deed of Trust or Note and lacks any standing to declare a default or to appoint someone else as foreclosure trustee to declare a default much less foreclose at all;

31. Plaintiff is granting no waiver for the required declaration of default;

32. Based upon the evidence submitted, Plaintiff(s) **deny** the Real Party in Interest executed the required ratification of commencement for the non-judicial foreclosure of the Subject Property and sees no proof to the contrary; failure on the part of the Real Party in Interest to foreclose of their own accord and in their own name would make this foreclosure void; and,

33. A statutory non-judicial process is not exempt and cannot lawful subvert the general custom and concept articulated by Federal Rule of Civil Procedure 17(a) (1) which requires that **"[a]n action must be prosecuted in the name of the real party in interest."** See also, _In re Jacobson_, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); _In re Hwang_, 396 B.R. 757, 766-67 (Bankr. C.D. Cal. 2008); **"A judgment is void when the court does not have personal or subject matter jurisdiction, or "lacks the inherent power to enter the order involved."** _Petersen_, 16 Wash. App. At 79 (citing _Bresolin_, 86 Wash. 2d. at 245; _Anderson_, 52 Wash. 2d at 761);

34. Plaintiff **demands** strict proof the Real Party in Interest executed ratification of commencement for the non-judicial foreclosure of the Subject Property; and,

*Failure of Consideration*

35. There is no evidence the Defendant paid consideration for the beneficial interest in the Note, Deed of Trust or Subject Property;

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 7 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

36. It was never the Plaintiff's intention that the Defendant or the Defendant's Predecessor(s) would fund a loan via the fractional reserve ledger book entry system at no risk or cost to the Lender and then turn around and sell the loan to investors for handsome unjust enrichment and yet not even deliver the loan to the investor as is evidenced by the attached Securitization Audit;

37. If the investor funded a loan or purchased the beneficial interest in a true loan, then the investor is the beneficiary and the investor must be identified and must come forward to declare the default and prosecute the foreclosure in the investors own name; the law does not allow for third party foreclosure even though the Washington Deed of Trust Act does unlawfully attempt to do so;

38. The investor needs to show a complete endorsement of the original Note which coincides with the assignments of the Deed of Trust before taking a benefit from the Subject Property;

39. Plaintiff is granting no waiver for the required consideration;

40. Based upon the evidence submitted, Plaintiff(s) **deny** Defendant paid consideration to purchase the Subject Property and sees no proof to the contrary; payment of consideration is a lawful requisite for title to pass from one party to another when there is a failure of consideration there is no contract and no sale; **"If any part of the consideration for a promise be illegal, or if there are several considerations for any unseverable promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise."** *Menominee River Co. v. Augustus Sples L & C Co.*, 147 Wis. 559 at p. 574: 132 NW 1118 (1912);

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

41. Plaintiff(s) **demand** strict proof Defendant paid consideration for the Subject Property;

*Trustee's Sale and Deed*

42. QUALITY LOAN SERVICE CORPORATION OF WASHINGTON lacks power of sale and authority to execute and record a valid Trustee's Deed; because,

43. QUALITY LOAN SERVICE CORPORATION OF WASHINGTON is governed by three (3) persons of record whose names are KEVIN MCCARTHY, President; THOMAS HOLTHUS, Secretary; SIERRA WEST, Vice President;

44. In effect, SIERRA WEST assumed the identity of Beneficiary to appointed herself or her company as Successor Trustee; this is a conflict of interest and a *quid pro quo*; if per say MERS could act as Beneficiary, which it cannot, the person of the Beneficiary and the person of the Trustee would have merged into the same person which is a breach of the Deed of Trust, violation of the Deed of Trust Act, RESPA as well as a Predatory act which voids all of the acts of SIERRA WEST and her agents;

45. The acts of SIERRA WEST constitute a 'Suspicious Activity' and requires submission of a Suspicious Activity Report to the U.S. Department of the Treasury by the Court or any Officers of the Court who read this complaint;

46. Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any **TRUSTEE'S DEED** relied upon for the benefit of the Defendant and relating to the Subject Property; Plaintiff has not seen and does not know who owns or holds the document; the document is required under the Washington Deed of Trust Act (RCW 61.24) by law to convey property to the purchaser; the trustee's sale is void without the properly recorded DEED; copies of the document appear unreliable due to possible electronic

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 9 of 38

**Maria Valentina Pavino, Plaintiff**
**13409 129th Place, NE**
**Kirkland, WA 98034**

recording, possible rubber stamp signatures, forgery, back dating, post dating, false certification, notary fraud, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the document making it void; **The contract is void if it is only in part connected with the illegal transaction and the promise single or entire.** *Guardian Life Insurance v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938);

47. Plaintiff(s) **demand** proof of ownership and production of the TRUSTEE'S DEED, production of the related Notary's Journal and strict proof the Signatory had the duly appointed authority to execute the document; and,

*Appointment of Successor Trustee*

48. SIERRA WEST as signatory of the APPOINTMENT OF SUCCESSOR TRUSTEE (20090324001239), lacked power and authority to appoint QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as Successor Trustee in the first place;

49. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. lacked power and authority to appoint QUALITY LOAN SERVICE CORPORATION OF WASHINGTON;

50. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee, never pays any consideration for any right, title or interest in the Deed of Trust, Note or Subject Property and therefore has no commercial power, or standing to exercise the power of the Beneficiary;

51. The attached Securitization Audit which clearly shows MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is not the actual Beneficiary;

52. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. had no right to appoint

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as Successor Trustee or make any appointments whatsoever;

53. QUALITY LOAN SERVICE CORPORATION OF WASHINGTON is governed by three (3) persons of record whose names are KEVIN MCCARTHY, President; THOMAS HOLTHUS, Secretary; SIERRA WEST, Vice President;

54. In effect, SIERRA WEST assumed the identity of Beneficiary to appointed herself or her company as Successor Trustee; this is a conflict of interest and a *quid pro quo*; if per say MERS could act as Beneficiary, which it cannot, the person of the Beneficiary and the person of the Trustee would have merged into the same person which is a breach of the Deed of Trust, violation of the Deed of Trust Act, RESPA as well as a Predatory act which voids all of the acts of SIERRA WEST and her agents;

55. The acts of SIERRA WEST constitute a 'Suspicious Activity' and requires submission of a Suspicious Activity Report to the U.S. Department of the Treasury by the Court or any Officers of the Court who read this complaint;

56. Plaintiff is granting no waiver for the required APPOINTMENT OF SUCCESSOR TRUSTEE;

57. Plaintiff(s) **deny** the validity of any **APPOINTMENT OF SUCCESSOR TRUSTEE** relied upon for the benefit of the Defendant and relating to the Subject Property; Plaintiff has not seen and does not know who owns or holds the document(s);  the document is required under the Washington Deed of Trust Act (RCW 61.24) to convey 'power of sale' to the Trustee/Grantor of the Defendant's DEED; failure of the appointment would void the Trustee's notice, sale and deed; copies of the document appear unreliable due

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

to possible electronic recording, possible rubber stamp signatures, forgery, back dating, post dating, false certification, notary fraud, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the document making it void; **"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire."** *Guardian Life Insurance v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938);

58. Based upon the evidence submitted, Plaintiff(s) **demand** production of any APPOINTMENT OF SUCCESSOR TRUSTEE, production of the related Notary's Journal and strict proof the Signatory had the duly appointed authority to execute the document; and,

*Assignment of Deed of Trust*

59. The attached Securitization Audit quotes a FORM 8-K CURRENT REPORT, dated September 7, 2007, that states "...mortgage loans were sold to Residential Accredit Loans, Inc. pursuant to an Assignment and Assumption Agreement, dated as of September 7, 2007, .....";

60. The ASSIGNMENT OF DEED OF TRUST (20100430002145), dated April 16, 2010, is void for fraud and perjury if the above said FORM 8-K is truthful and reliable;

61. There is no record of any failure of earlier assignment dated September 7, 2007;

62. There is no timely assignment of the Deed of Trust from HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.) to RESIDENTIAL ACCREDIT LOANS, INC. to RESIDENTIAL FUNDING COMPANY, LLC. to RALI SERIES 2007-QH8

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

TRUST to the holders; and the Defendant is not one of the holders;

63. The Defendant lacks standing to foreclose the Note, Deed of Trust, Subject Property;

64. The attached Securitization Audit shows the Defendant is not the Beneficiary;

65. Plaintiff is granting no waiver for the required ASSIGNMENT OF DEED OF TRUST;

66. Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any **ASSIGNMENT OF DEED OF TRUST** and/or the lack of any valid ASSIGNMENT OF DEED OF TRUST, relied upon for the benefit of the Defendant and relating to the Subject Property; Plaintiff has not seen and does not know who owns or holds the document(s); the document(s) is/are required under the Washington Deed of Trust Act (RCW 61.24) to pass authority to the Assignee necessary to appoint a successor trustee; failure of the assignment(s) or a broken chain of assignments would void the Trustee's appointment, notice sale and deed; copies of the document appear unreliable due to possible electronic recording, possible rubber stamp signatures, forgery, back dating, post dating, false certification, notary fraud, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the appointment, trustee's deed and sale, etc.; In *Kluge v. Fugazy*, 145 AD2d 537, 536 NYS2d 92 [2nd Dept., 1988] the Court held that "**the assignment of a mortgage without transfer of the debt is a nullity and a cause of action for foreclosure must fail.**"; In *Merritt v. Bartholick*, 36 NY 44 [1867] the Court of Appeals held that "**a mortgage is but an incident to the debt which it is intended to secure (cites omitted), the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is assigned by it. The security cannot be separated from the debt, and exist independently**

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

of it. **This is the necessary legal conclusion, and recognized as the rule by a long course of judicial decisions.";** In *MERSCORP, INC. v. Romaine*, 8 NY3d90, 828 NYS2d 266 [2006], Justice Ciparick, in her concurring opinion specifically notes **'the Court's ruling left for another day arguments "that MERS has violated the clear prohibition against separating a lien from its debt.";**

67. Plaintiff(s) **demand** production of all the ASSIGNMENT OF DEED OF TRUST, production of the underlying Note, production of the related Notary's Journal and strict proof the Signatory(ies) had the duly appointed authority to execute the document(s); and,

*Notice of Trustee's Sale*

68. The true Beneficiary never appointed QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as Successor Trustee;

69. QUALITY LOAN SERVICE CORPORATION OF WASHINGTON had no authority to issue a NOTICE OF TRUSTEE SALE (20100721001068);

70. QUALITY LOAN SERVICE CORPORATION OF WASHINGTON is governed by three (3) persons of record whose names are KEVIN MCCARTHY, President; THOMAS HOLTHUS, Secretary; SIERRA WEST, Vice President;

71. In effect, SIERRA WEST assumed the identity of Beneficiary to appointed herself or her company as Successor Trustee; this is a conflict of interest and a *quid pro quo*; if per say MERS could act as Beneficiary, which it cannot, the person of the Beneficiary and the person of the Trustee would have merged into the same person which is a breach of the Deed of Trust, violation of the Deed of Trust Act, RESPA as well as a Predatory act which voids all of the acts of SIERRA WEST and her agents;

72. The acts of SIERRA WEST constitute a 'Suspicious Activity' and requires submission of a

VERIFIED COMPLAINT
FOR QUIET TITLE

**Maria Valentina Pavino, Plaintiff**
**13409 129th Place, NE**
**Kirkland, WA 98034**

Suspicious Activity Report to the U.S. Department of the Treasury by the Court or any Officers of the Court who read this complaint;

73. The NOTICE OF TRUSTEE SALE (20100721001068) is void for fraud;

74. Plaintiff is granting no waiver for the required NOTICE OF TRUSTEE SALE;

75. Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any **NOTICE OF TRUSTEE'S SALE** relied upon for the benefit of the Defendant and relating to the Subject Property; Plaintiff has never seen and does not know who owns or holds the document; the document is required under the Washington Deed of Trust Act (RCW 61.24); failure caused by invalid appointment of trustee or falsification of the said Notice would invalidate the trustee's notice, sale and deed; copies of the document appear unreliable due to possible electronic recording, possible rubber stamp signatures, forgery, back dating, post dating, false certification, notary fraud, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the document making it void; "**The contract is void if it is only in part connected with the illegal transaction and the promise single or entire.**" _Guardian Life Insurance v. Guardian Mut. Savings Bank_, 227 Wis. 550, 279 N.W. 79 (1938);

76. Plaintiff(s) **demand** production of the NOTICE OF TRUSTEE'S SALE, production of the related Notary's Journal and strict proof the Signatory: SIERRA WEST, had the duly appointed authority to serve as both Beneficiary and Trustee; and,

*Notice of Default*

77. Plaintiff has no recollection of receiving a NOTICE OF DEFAULT; Notwithstanding, any

VERIFIED COMPLAINT
FOR QUIET TITLE

Page  15 of 38

**Maria Valentina Pavino, Plaintiff**
**13409 129th Place, NE**
**Kirkland, WA 98034**

notice of default issued by the Defendant, as trustee, the Servicer, the foreclosure trustee or MERS is void for fraud as expounded above;

78. Plaintiff is granting no waiver for the required NOTICE OF DEFAULT;

79. Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any **NOTICE OF DEFAULT** relied upon for the benefit of the Defendant and relating to the Subject Property; the Plaintiff has not seen and does not know who owns or holds the document; the document is required under the Washington Deed of Trust Act (RCW 61.24); failure caused by invalid appointment of trustee, invalid assignment of Deed of Trust, false declaration of default would invalidate the notice of default and trustee's notice, sale and deed; copies of the document appear unreliable due to possible electronic recording, possible rubber stamp signatures, forgery, back dating, post dating, false certification, notary fraud, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the appointment, trustee's deed and sale, etc., **"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire."** _Guardian Life Insurance v. Guardian Mut. Savings Bank_, 227 Wis. 550, 279 N.W. 79 (1938);

80. Plaintiff(s) **demand** production of the NOTICE OF DEFAULT, production of the related Notary's Journal and strict proof the Signatory's duly appointed authority to execute the document; and,

*Deed of Trust*

81. The underlying trust represented by the subject Deed of Trust has been broken in a

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 16 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

multitude of ways including those described above as well as those evidenced by the attached Securitization Audit and Forensic Audit Report:

82. Six (6) violations of the Truth in Lending Act (TILA), see attached Forensic Audit Report, page 10;

83. Three (3) violations of the Real Estate Settlement Procedures Act (RESPA), see attached Forensic Audit Report, page 13;

84. Thirteen (13) Predatory Lending violations, see attached Forensic Audit Report, page 14;

85. Defendant and/or Defendant's Predecessor made violations to GAAP and FASB rules by failing to account for Plaintiff's deposited note and credit Plaintiff accordingly (FAS 125);

86. The Defendant and/or Defendant's Predecessors converted the Plaintiff's Note into a bearer instrument and separated it from the Deed of Trust as evidenced by the below referenced Securitization Audit and Notice of Trustee Sale;

87. For non-disclosure;

88. Defendant claims to hold the beneficial interest in the Deed of Trust; BUT,

89. The Note appears to have been securitized and sold off to an Investment Vehicle or visa versa;

90. Failure to follow provisions of statutory foreclosure act RCW 61.24;

91. Failure of Consideration; and for other reasons;

92. Plaintiff is granting no waiver for the required Deed of Trust or for breaches made thereto;

93. Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any **DEED OF**

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 17 of 38

**Maria Valentina Pavino, Plaintiff**
**13409 129th Place, NE**
**Kirkland, WA 98034**

**TRUST** relied upon for the benefit of the Defendant and relating to the Subject Property; the Plaintiff  has not seen and does not know who owns or holds the document; the document is required under the Washington Deed of Trust Act (RCW 61.24); failure caused by broken trust between Grantor and Grantee or assignees, broken chain of assignments, failure of consideration, stolen document, naming of improper party as Beneficiary, would invalidate the deed of trust, all assignments, the notice of default, trustee's appointment, notice, sale and deed; copies of the document appear unreliable due to possible electronic recording, possible rubber stamp signatures, forgery, back dating, post dating, false certification, notary fraud, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the document making it void; **"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire."** _Guardian Life Insurance v. Guardian Mut. Savings Bank_, 227 Wis. 550, 279 N.W. 79 (1938); The principals of the following judicial foreclosure case necessarily pertain equally to non-judicial foreclosure: **"To establish a prima facie case in an action to foreclose a mortgage, the Defendant must establish the existence of the <u>mortgage and the mortgage note</u>. It is the law's policy to allow only an aggrieved person to bring a lawsuit . . . A want of "standing to sue," in other words, is just a way of saying that this particular Defendant  is not involved in a genuine controversy, and a simple syllogism takes us from there to a "jurisdictional" dismissal"** _Indymac Bank v. Bethley_, 880 N.Y.S. 2d 873 (2009);

94. Plaintiff **demands** production of the DEED OF TRUST, production of the related

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

Notary's Journal and strict proof the Signatory had the duly appointed authority to execute the document; and,

*Promissory Note*

95. The Defendant and/or the Defendant's Predecessor permanently un-secured the Note (held by the Investment Vehicle) by separating it from the Deed of Trust (held by Defendant) and delivering neither to the alleged Investor/Beneficiary;

96. The Note is a fraud on the face; prepared by the original Lender it states: '*...... for a loan I have received......*' but at the time the Note was executed Plaintiff had received no loan; Plaintiff signed the Note in good faith but never received a loan;

97. Plaintiff was defrauded and never received a receipt for the deposit of the Note;

98. Plaintiff never received any benefit from the T-Bill purchased from deposit of the Note;

99. Defendant benefited from 'Use' of the Note, from incomplete endorsement of the Note, from sale of the Note to an Investment Vehicle;

100.    Plaintiff is granting no waiver for presentment of the Note due to failures in disclosure;

101.    Plaintiff is granting no waiver for the required Note or for breaches made thereto; Plaintiff reserve the right to inspect the original Note and endorsements;

102.    Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any mortgage Note relied upon for the benefit of the Defendant and relating to the Subject Property; the Plaintiff  has not seen and does not know who owns or holds the Note; The document is required under the Washington Deed of Trust Act (RCW 61.24); Without the said Note the Deed of Trust has nothing to secure in which case it becomes

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

invalid, void; failure of the holder in due course to maintain ownership and possession of both the Note and Deed of Trust would literally un-secure (legally unfasten) the Note and break the underlying trust between Borrower and Lender rendering the Deed of Trust void; the deed of trust, all assignments, the notice of default, trustee's appointment, notice, sale and deed would all become void; copies of the document appear unreliable due to possible rubber stamp signatures, forgery, back dating, post dating, false endorsement, misrepresentations, perjury, hearsay, public corruption, violation of ethics, abuse of process, falsified related records and documents, etc., any one of which invalidates the document making it void; The principals of the following judicial foreclosure case necessarily pertain equally to non-judicial foreclosure: In *Kluge v. Fugazy*, 145  AD2d 537, 536 NYS2d 92 [2nd Dept., 1988] the Court held that "**the assignment of a mortgage without transfer of the debt is a nullity and a cause of action for foreclosure must fail.**"; In *Merritt v. Bartholick*, 36 NY 44 [1867] the Court of Appeals held that "**a mortgage is but an incident to the debt which it is intended to secure (cites omitted), the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is assigned by it. The security cannot be separated from the debt, and exist independently of it. This is the necessary legal conclusion, and recognized as the rule by a long course of judicial decisions.**"; In *MERSCORP, INC. v. Romaine*, 8 NY3d90, 828 NYS2d 266 [2006], Justice Ciparick, in her concurring opinion specifically notes that '**the Court's ruling left for another day the argument "that MERS has violated the clear prohibition against separating a lien from its debt."**; "**To establish a prima facie case in an action to foreclose a mortgage, the Defendant must establish the existence of the <u>mortgage and the mortgage note</u>. It is the law's policy to allow only an aggrieved person to bring a lawsuit . . . A want of 'standing to**

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

sue," in other words, is just a way of saying that this particular Defendant is not involved in a genuine controversy, and a simple syllogism takes us from there to a "jurisdictional" dismissal" *Indymac Bank v. Bethley*, 880 N.Y.S. 2d 873 (2009); "**The contract is void if it is only in part connected with the illegal transaction and the promise single or entire.**" *Guardian Life Insurance v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938);

103.    Plaintiff(s) **demand** production of the related promissory Note, production of the related Notary's Journal and strict proof the Signatory had the duly appointed authority to execute the document; and,

### Cancellation and Return of Note and Deed of Trust

104.    The Defendant, Defendant's Predecessors nor the Foreclosure Trustee have any intention of Cancelling and Returning the Note and Deed of Trust to the Plaintiff; because,

105.    Plaintiff is granting no waiver for the required cancelling and returning the Note and Deed of Trust to the Plaintiff;

106.    Based upon the evidence submitted, Plaintiff(s) **deny** the Foreclosure Trustee obtained possession of the subject Note and Deed of Trust so as to Cancel them and return them to the Plaintiff before issuing a Trustee's Deed; Cancellation and return of the Note and Deed of Trust (to Plaintiff) is required under the Deed of Trust; failure to cancel and return the Note and Deed of Trust breaches the underlying trust and subsequently voids the deed of trust, all assignments, the notice of default, trustee's appointment, notice, sale and deed; "*As a general proposition, a party seeking to foreclose*

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

Page 21 of 38

*a mortgage must own or control the underlying debt."* See <u>Gotlib v. Gotlib</u>, 399 N.J. Super. 295 (App. Div. 2008); <u>Garroch v. Sherman</u>. 6 N.J. Eq. 219 (Ch. 1847); and <u>Bellistri v. Ocwen Loan Servicing, LLC</u>, 248 S.W. 3d. 619 (Mo. 2009);

107.    Plaintiff(s) **demand** strict proof the mortgage Note and Deed of Trust have been delivered to the Foreclosure Trustee for cancellation and returned to the Plaintiff(s) before the trustee's deed is issued and recorded;

*Certified Accounting*

108.    The Defendant or Defendant's Predecessors failed to disclose how the loan obligation functions and used superior knowledge and manipulation of the accounting to defraud the Plaintiff; Fraud **"usually consists of a misrepresentation, concealment, or nondisclosure of a material fact, or at least misleading conduct, devices, or contrivance."** <u>Keers and Co. v. American Steel and Pump Corp.</u> 234 F. supp. 201, 203 (S.D.N.Y. 1964); **"EquiFirst, when making the loan, violated Regulation Z of the Federal Truth in Lending Act 15 USC § 1601 and the Fair Debt Collections Practices Act 15 USC § 1692; "intentionally created fraud in the factum" and withheld from Defendant [/borrower]... "vital information concerning said debt and all of the matrix involved in making the loan"** <u>Deutsche Bank v. Peabody</u>, 866 N.Y.S. 2d. 91 (2008);

109.    The Defendant or Defendant's Predecessors apparently stole Plaintiff's credit from the deposit of the Plaintiff's Note through fraudulent manipulation of the accounting;

110.    The Defendant or Defendant's Predecessors apparently stole the T-Bill purchased from deposit of the Plaintiff's Note through fraudulent manipulation of the accounting and either have or will fraudulently claim it as abandoned property for their own benefit;

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

Page  22 of 38

111.     The Defendant or Defendant's Predecessors apparently fraudulently induced investors to fund a 'loan' for the Plaintiff so the Defendant or Defendant's Predecessors could avoid using the Plaintiff's Deposit/T-Bill to fund the loan so the Defendant or Defendant's Predecessors in order to steal it and abscond undetected;

112.     The Defendant or Defendant's Predecessors never brought any equity of their own to the loan contract; **"A lawful consideration must exist and be tendered to support the Note."** _Anheuser-Busch Brewing Company v. Emma Mason_, 44 Minn. 318, 46 N.W. 558 (1890);

113.     Plaintiff is granting no waiver for the required Certified Accounting which includes an accounting of the Plaintiff's deposit;

114.     Based upon the evidence submitted, Plaintiff(s) **deny** the validity of any **Certified Accounting** relied upon for the benefit of the Defendant and relating to the Subject Property; which does not include a **credit,** in favor of the Plaintiff, generated by deposit of Plaintiff's Note; Credit for deposit of the Plaintiff's Note would be required under 12 U.S.C. 1813(i)(1); under 12 U.S.C. 1813(i)(1) and 12 U.S.C. 1813n (GAAP), the bank has to account for receiving the Plaintiff's Note;  Plaintiff believes **debits** to the account are likely being fraudulently misrepresented as 'Loan Funds' instead of 'withdrawn funds' or 'purchase funds'; Plaintiff believes the account records are being manipulated to fraudulently prevent the Plaintiff's said initial **credit** from merging with the **debits** bringing the loan balance to **0.00 (zero)**; meaning a default is an accounting and mathematical impossibility without fraudulently corrupting the book entry accounting system; Plaintiff further **claims** all monthly loan payments of principal,

VERIFIED COMPLAINT
FOR QUIET TITLE

Page  23 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

1  interest, insurance and fees are, in fact, fraudulent overbillings and all monthly loan

2  payments constitute overpayments that are due and refundable back to the Plaintiff;

3  Defendant's and/or Defendant's predecessor(s) failure to maintain a comprehensive

4  accounting that incorporates the Plaintiff's **credit** for deposit of Note is a fraud and

5  breach of the underlying trust between Borrower and Lender and voids the Note, deed

6  of trust, all assignments, the notice of default, trustee's appointment, notice, sale and

7  deed; and, **"Party having superior knowledge who takes advantage of another's ignorance of**

8  **the law to deceive him by studied concealment or misrepresentation can be held responsible for**

9  **that conduct."** _Fina Supply Co. v. Abilene National Bank_, 726 S.W. 2d 537 (1987); **"A bank is**

10 **not the holder in due course upon merely crediting the depositors account."** _Bankers Trust v._

11 _Nagler_, 23 A.D.2d 645, 257 N.Y.S.2d 298 (1965);

12

13

14 115.      Plaintiff(s) **demand** a Certified Accounting of the entire loan transaction which

15 includes the Plaintiff's **credit** on account received for deposit of the subject Note; and,

16                              _Securitization Audit_

17 **116.**    Plaintiff(s) **<u>Securitization Audit Report</u>**, attached herewith as Exhibit "C" and

18 incorporated herein, reveals the Defendant is not the Beneficiary of the alleged loan

19 obligation; and, the Defendant and/or Defendant's predecessor(s) made an

20 unauthorized use and/or took a unauthorized benefit from the Plaintiff's Note without

21 paying consideration to Plaintiff(s) in return; **"UCC § 3-305 TRANSFER OF**

22 **INSTRUMENT: RIGHTS ACQUIRED BY TRANSFER (c)** Transfer of an instrument,

23 whether any right of the transferor is a negotiation, vests in the transferee any right to

24 the transferor to enforce the instrument, including any right as a holder in due course,

25

26

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

**but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.**";

117.     Plaintiff(s) **demand** strict proof Defendant and/or Defendant's predecessor(s) have not made an unauthorized 'Use' of, and/or took a benefit from the Plaintiff(s)'s Note by secretly endorsing it and/or converting it into a bearer instrument and/or passing it and/or insuring it against default, without paying consideration to Plaintiff(s) in return;

*Forensic Audit*

118.     Plaintiff(s) **Forensic Audit Report** for the alleged Loan Transaction reveals many **TILA, RESPA and Predatory Lending Violations**; **"If the actor's conduct is a substantial factor in bringing about harm to another, or the manner in which it neither foresaw nor should have for seen the extent of the harm or the manner in which it occurred does not prevent him from being liable."** *Beasley v. U.S.,* 81 F. Supp. 518; the entire Report is attached herewith as Exhibit **"D"** and incorporated herein; the summary is as follows:

    1.   Total TILA Violations (see p. 10): 6

    2.   Total Potential RESPA Violations (see p. 13): 3

    3.   Total Predatory Lending Violations (see p. 14): 13

*TILA (Quoting the Report)*

119.     The TILA applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

and/or payable by written agreement in more than four installments. 15 U.S.C. §§ 1601-1666j.

120.     Violations and/or failing are as follows:

a.   Notice of Right to Cancel (12 C.F.R § 226.23(b))

b.   Payment Schedule correctly identified on TIL. 12 C.F.R. §§226.18(g).(h).

c.   "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) provided within 3 days of application. [Or equivalent disclosure – see 12 C.F.R. § 226.19(b)].

d.   Property/Hazard Insurance disclosure provided (choice by consumer). C.F.R. § 226.4(d) (2).

e.   Finance Charge Calculation

f.   All disclosures accurately reflect the legal obligation between the parties; 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17

121.     Where a material disclosure was not given or inaccurate (APR, finance, amount financed, payment schedule, or total of payments), or consumer was not provided with proper notice of right to cancel, the right of rescission is extended to 3 years. Statutory (up to $2,000) and actual damages, as well as attorney's fees, may also be available for the violations noted.

*RESPA (Quoting the Report)*

122.     The RESPA applies because lender regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property. 12 U.S.C. §§ 2601.2617;

123.     Violations and/or failing are as follows:

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

    a. Failed to disclose all affiliated business arrangements. 24 CFR § 3500.15.

    b. Did not give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums. 24 CFR § 3500.14.

    c. Charged fees in excess of reasonable value of the goods provided and/or services rendered.

124.      Recommendation: QWR/discovery re mortgage servicing for potential servicing violations or breach of contract.

125.      Actual damages, statutory (up to $1000 if show pattern and practice), and treble damages for excessive portion of fees (below), plus attorney's fees and costs for violations noted.

126.      The following are suspect or excessive closing costs/fees that may be actionable for treble damages pursuant to 12 U.S.C. § 2607: BROKER FEE $2,312.50, YEILD SPREAD PREMIUM $ 4,125.00

*Predatory Lending (Quoting the Report)*

127.      "Predatory lending" is a general term used to describe unfair, deceptive, or fraudulent practices of lenders during the loan origination process. Predatory lending is often a combination of several factors that can only be evaluated in the context of the overall lending transaction. Typically, no single factor can be relied upon to consider it a predatory loan;

128.      A large number of agencies and consumer organizations recognize predatory lending, including, for example, the Department of Housing and Urban Development, federal Deposit Insurance Corporation, National Consumer Law Center, California Department of Real

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 27 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

Estate, Fannie Mae, National Association of Consumer Advocates, Association of Community Organizations for Reform Now, National Home Equity Mortgage Association, and Center for Responsible Lending;

129.     The Predatory lending factors present in the subject transaction were found to be as follows:

    a.   Solicitation for refinance.

    b.   Mortgage broker and corresponding lender involved.

    c.   Borrower was a minority and/or the transaction was conducted in a foreign language.

    d.   Loan-to-value ratio above 80%.

    e.   Teaser rate involved.

    f.   Interest rate on 1st was more than 2 points above: 6.08% (2.77 margin) [average US 5/1 ARM rate] or 6.4% [average 30-year fixed]. (Source: Freddie Mac 1/2003-12/2006).

    g.   Excessive closing Costs/Fees.

    h.   Prepayment Penalty.

    i.   Interest-Only Payments.

    j.   Negative Amortization Payments.

    k.   Broker Compensation $\geq$ 2% (including yield spread premium).

    l.   Loan Flipping – refinance within 3 years of previous loan.

    m.   Unsecured Debt Shifted to Secured (i.e., credit cards).

    n.   Other unfair, deceptive, or fraudulent practices in transaction.

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 28 of 38

**Maria Valentina Pavino, Plaintiff**
**13409 129th Place, NE**
**Kirkland, WA 98034**

130.    The Forensic Audit is very comprehensive and includes Financial & Underwriting Analysis, Truth in Lending Act Analysis, HOEPA Analysis, RESPA Analysis, Predatory Indicators, Potential Additional Claims Analysis, Discrimination, Fraud, Foreign Language Translation, Breach of Contract, Breach of Implied Covenant of Fair Dealing, Breach of Fiduciary Duty, Unjust Enrichment, Unconscionability, Civil Conspiracy, Unfair/Deceptive Business Practices and Other Claims & Recommended Legal Research; The Report further recommends a "QWR" (Qualified Written Request) for evaluating the entire mortgage loan servicing history for breach of contract; Expert witness having **"special knowledge of the subject about which he is to testify"** 26 A. 2d 770, 773 **"An affidavit containing admissible expert opinion on a significant issue of fact is generally sufficient to create a genuine issue of fact."** *J.N. v. Bellingham School Dist. No. 501*, 74 Wn. App. 49, 871 P.2d 1106; **"A trial is not useless, but absolutely necessary, where there is a genuine issue as to any material fact."** *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963); **Quiet Title [is] an equitable action to determine all adverse claims to the property in question; a suit in equity brought to obtain a final determination as to the title of a specific piece of property, such a suit is usually the result of various individuals asserting contradictory rights to the same parcel of land. In such a situation, the court, in order to prevent a multiplicity of suits, will bring all the interested parties together to determine the right and ultimately issue an injunction."** 164 N.W. 388, 341.

*Qualified Written Request*

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

131.    Defendant's past failure to answer the Plaintiff's Qualified Written Request is also an estoppel to the Defendant's foreclosure action and another violation of RESPA and TILA; **"Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading."** <u>U.S. v. Tweel</u>, 550 F.2d 297 (1977); **"Your silence is your acquiescence."** <u>Connally v. General Construction Co.</u>, 269 U.S. 385, 391;

132.    Based upon the evidence submitted, the Plaintiff(s) **deny** the trustee's sale of the Subject Property would extinguish the Plaintiff(s) rights, title and interest in and to the Subject Property and Plaintiff(s) sees no proof to the contrary;

*Civil Rights*

**133.**    Based upon the evidence submitted, the Defendant and/or Defendant's predecessor(s) are and have deprived the Plaintiff(s) of civil rights, due process of law and equal protection under the law, through predatory lending practices employed to deprive Plaintiff(s) of valuable Subject Property without due process of law and Plaintiff(s) sees no proof to the contrary;

*Common Law Lien*

134.    A non-judicial foreclosure of the Subject Property does not extinguish, displace or supersede the Plaintiff's Common Law Lien maintained to constitute a substantive Common Law claim/lien for past financing (original signature Note(s)), repair, maintenance, improvement, or performance of an obligation of the subject property, even if incompletely performed, and does not 'jump' any claim on the Plaintiff's life blood, time, labor, energy, sweat and toil; Common Law Liens supersede mortgages and

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 30 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

equity Liens. *Drummons Carriage Co. v. Mills* (1898) 74 NW 966; *Hewitt v. Williams* 47 LaAnn, 742, 17 So. 269; *Carr v. Dail*, 19 SE 235; *McMahon v. Lundin*, 58 NW 827.

## FEDERAL QUESTION

135.    The Plaintiff brings this matter forth to this Court on the grounds of **FEDERAL QUESTIONS** relating to violations of civil rights, constitutional matters, fraud in various matters of accounting pursuant to GAAP, violations of RESPA, TILA and Predatory Lending Violations, issues of securitization and then procedural issues and matters in regards to loan origination, recordation of documents, notarization, authority of signatories, assignments, appointments, notices, trustee's sale and trustee's deed and international common law lien rights.

## DEMAND FOR PROOF

Plaintiff makes the following demands for proof:

136.    Plaintiff demands production of the original Note for inspection of the endorsement and comparison to the Assignments of the related Deed of Trust;

137.    Plaintiff demands production of the Trustee's Appointment, Notice of Sale, Deed (if any) and Proof of Sale (if any), Proof of Consideration, all Assignments of Deed of Trust, Certified Accounting, Answer to Qualified Written Request and Explanations about the TILA, RESPA, and Predatory Lending Violations;

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

138.    Plaintiff demands proof of signatory authority of each person who executed each said document that the Defendant relies on to establish its claim upon the Subject Property; production of the related Notary's Journal and strict proof the Signatory had the duly appointed authority to execute the document;

139.    Plaintiff demands proof the Foreclosure Trustee Cancelled and Returned the promissory Note and Deed of Trust to the Plaintiff;

## FIRST CAUSE OF ACTION

**140.**    Plaintiff re-alleges and incorporates by reference in this Cause of Action each allegation set forth in paragraphs 1 though 135above. Defendant damaged the Plaintiff by benefitting from, or intending to benefit from, a fully executed fraudulent **foreclosure** of the Subject Property.

## SECOND CAUSE OF ACTION

141.    Plaintiff re-allege and incorporates by reference in this Cause of Action each allegation set forth in paragraphs 1 though 136 above. Defendant damaged the Plaintiff by benefiting from, or intending to benefit from, a fraudulent declaration of **default** of the fraudulent mortgage Loan.

## THIRD CAUSE OF ACTION

142.    Plaintiff re-allege and incorporates by reference in this Cause of Action each

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

Page 32 of 38

allegation set forth in paragraphs 1 though 136 above. Defendant damaged the Plaintiff by benefiting, or intending to benefit from, fraudulent **billing and collection** of mortgage Loan payments, or the failure thereof, from the Plaintiff under a false obligation.

## FOURTH CAUSE OF ACTION

143.      Plaintiff re-alleges and incorporates by reference in this Cause of Action each allegation set forth in paragraphs 1 though 136 above. Defendant damaged the Plaintiff by benefiting from, or intending to benefit from, a fraudulent and predatory **loan** to the Plaintiff.

## FIFTH CAUSE OF ACTION

144.      Plaintiff re-alleges and incorporates by reference in this Cause of Action each allegation set forth in paragraphs 1 though 136 above. Defendant damaged the Plaintiff by benefiting from, or intending to benefit from, a fraudulent **representation** that original Lender makes loans but never did make a loan or bring any equity to the loan transaction.

## SIXTH CAUSE OF ACTION

145.      Plaintiff re-alleges and incorporates by reference in this Cause of Action each allegation set forth in paragraphs 1 though 136 above. Defendant damaged the Plaintiff by benefiting from, or intending to benefit from, a failure to heed and settle Plaintiff's

VERIFIED COMPLAINT
FOR QUIET TITLE

Page  33 of 38

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

1   Common Law Lien before initiating a fraudulent foreclosure and/or purchase of the

2   Subject Property.

3

4

5                              **RELIEF REQUESTED**

6   WHEREFORE, Plaintiff prays for judgment against the Defendant, as to all causes of action, as

7   follows:

8       146.    For general and special damages according to proof;

9
        147.    For exemplary and punitive damages;
10
11      148.    For Plaintiff's reasonable fees and costs necessary to obtain relief;

12      149.    For an order rescinding any Trustee's Deed in connection with the (alleged)

13              mortgage Loan and any other document signed or entered into by the Plaintiff(s) in

14              connection with the mortgage loan;

15      150.    For an order releasing and/or re-conveyance of any Deed of Trust or other
16
                document signed or entered into and subsequently recorded in connection with the
17
18              mortgage Loan;

19      151.    For permanent injunction against the Defendant, its assignees, subsidiary,

20              affiliates, successors, agents, servants, officers, directors, employees, and all persons

21              acting in concert with them, directly or indirectly, from engaging in the improper,

22              unlawful, unfair, fraudulent and/or deceptive conduct as described above and
23
                according to proof;
24
25      152.    For the return of all payments of principal and interest as overpayments;

26      153.    For an order quieting title in favor of the Plaintiff;

VERIFIED COMPLAINT                          **Maria Valentina Pavino, Plaintiff**
FOR QUIET TITLE                                **13409 129th Place, NE**
                                                  **Kirkland, WA 98034**
Page  34 of 38

154.      And for such other and further relief as this Court may deem just and proper.

## VERIFICATION

I, the under signed Plaintiff(s)/Affiant(s), do affirm the foregoing Verified Complaint for Quiet

Title, the allegations therein, the pleading and contents to be true, correct, complete, to the

best of my knowledge, information and belief.

Dated: **November** _04_ , **2010**

                                     FOR: MARIA VALENTINA PAVINO, PLAINTIFF

BY: _____

### JURAT

I _melissa D wagner_ a Notary Public certify that I know or have satisfactory

evidence that _Maria Valentina Pavino_ appeared before me, and signed this

instrument and acknowledged it to be free and voluntary act for the uses and purposes

mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of

_Pierce_ that the foregoing paragraph is true and correct.

_11/4/2010_
DATED:

_melissa D w_
Notary Public _melissa D wagner_

My appointment expires _3-16-14_

MELISSA D. WAGNER
COMMISSION EXPIRES
NOTARY
SEAL
PUBLIC
03-16-14
STATE OF WASHINGTON

VERIFIED COMPLAINT
FOR QUIET TITLE

Page 35 of 38

                                     **Maria Valentina Pavino, Plaintiff**
                                     **13409 129th Place, NE**
                                     **Kirkland, WA 98034**

1
2
3

# ATTACHED EXHIBITS

4
5

**1. Exhibit "A"   STATUTORY WARRANTY DEED (199403313538)**

6

**2. Exhibit "B"   Washington's Attorney General's Letter to Foreclosure Trustee**

7

**3. Exhibit "C"   Securitization Audit Report  w/ Affidavit in Support**

8
9

**4. Exhibit "D"   Forensic Audit Report  w/ Affidavit in Support**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

VERIFIED COMPLAINT
FOR QUIET TITLE

Maria Valentina Pavino, Plaintiff
13409 129th Place, NE
Kirkland, WA 98034

# EXHIBIT "A" ATTACHED

# (HEREUNDER)

This Space Reserved For Recorder's Use:

Filed for Record at Request of

Alpine Escrow Inc.

AFTER RECORDING MAIL TO:

Name      Abelardo M. Inocentes

Address      13409 129th Place N.E.

City, State, Zip   Kirkland, WA  98034

Escrow number: 6564

[OLD REPUBLIC TITLE, LTD. 70 3 3 3 4-3
9403313538

## Statutory Warranty Deed

THE GRANTOR   Donald W. Brown and Barbara K. Brown, husband and wife

for and in consideration of   TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION

in hand paid, conveys and warrants to   Abelardo M. Inocentes and Valentina A. Inocentes, husband and wife and Ma Valentina Pavino, a single person

the following described real estate, situated in the County of     King                         State of Washington:
Lot 200, Firloch No. 7, according to the plat thereof recorded in Volume 97 of Plats, page 60, records of King County, Washington.  Situate in the County of King, State of Washington.

Subject to easement provisions as contained on the face of the plat.
Subject to restrictions, conditions, and covenants, and the terms and conditions thereof as contained on the face of the recorded plat of said additon.
Subject to restrictions, conditions, covenants, and easements and the terms and conditions recorded under Auditor's File No. 7503280525.
Subject to easement for slopes cuts and fills as disclosed by plat of said Addition.

Dated this            28          day of March          , 1994

By   Donald W Brown                    By
     Donald W. Brown

By   Barbara K Brown                   By
     Barbara K. Brown

STATE OF Washington
COUNTY OF King            } ss

I certify that I know or have satisfactory evidence that Donald W. Brown and Barbara K. Brown

are the person s  who appeared before me, and said person s  acknowledged that they   signed this instrument and acknowledged it to be their  free and voluntary act for the uses and purposes mentioned in this instrument.
Dated: MARCH 30, 1994

William J. Moll
Notary Public in and for the State of Washington
Residing at Seattle
My appointment expires: March 8, 1997

E1366670 03/31/1994  2723.40  153000.00

# EXHIBIT "B" ATTACHED

# (HEREUNDER)



Rob McKenna

# ATTORNEY GENERAL OF WASHINGTON

1125 Washington Street SE • PO Box 40100 • Olympia WA 98504-0100

October 13, 2010

Trustee Name
Address
City, State  Zip Code

RE:    **Potential Unlawful Foreclosure Practices in Washington**

Dear Foreclosure Trustee:

I am writing to you regarding serious problems associated with foreclosures in the state of Washington that we have been observing.  As a trustee responsible for conducting non-judicial foreclosures, you have a statutory duty to perform all foreclosures in good faith and you owe that duty to both the homeowner and the lender.  Your duty includes assuring that every procedural step, every legal notice, and all mandated mediation opportunities are provided to homeowners facing foreclosure in fullest conformance with the law.

Our office has been investigating lenders, mortgage servicers and local trustees.  We have discovered that problems related to foreclosure processing are not limited to the national banks and mortgage servicers.  In Washington, we have found evidence that foreclosure trustees appear to be ignoring laws specific to our state and may be regularly using some of the same questionable practices used by national banks, such as:

- Employees of foreclosure trustees are signing documents posing as the corporate officer of multiple banks and mortgage servicers.  This may misstate the signer's role in the process and be a conflict of interest contrary to the trustee's duties to the homeowner.

- The signatures of some trustees vary widely from document to document, which suggests that trustees are signing other person's signatures.  This problem is compounded by the fact that the signatures are notarized with a statement that the signer is the actual person standing before the notary.

- Trustees may be foreclosing on homes when there is no clear chain of ownership for the loan or the security interest.  Trustees must be sure that the lender has the authority to foreclose and that the documents which create the chain of ownership are accurate.  One of the problems emerging nationally is that lenders are "reverse-

ATTORNEY GENERAL OF WASHINGTON

Trustee Name
October 13, 2010
Page 2

engineering" the chain of title, including back-dating documents to make it appear as though the loan was passed from company to company on certain dates when no such assignment actually occurred.

- Since July 26, 2009, Washington trustees have been required to identify the actual owner of the loan and the company that is acting as servicer, with their addresses and a phone number for the servicer. Many default notices have gone out without this required information, which can make it harder for homeowners to contact and deal with their mortgage owners.

- Lenders with mortgages made between 2003 and 2007 must advise the borrower that he or she has the right to request mediation and, if requested, the loan owner will schedule the meeting to occur within fourteen days of the request. It is our understanding that lenders are regularly not telling homeowners about this right, which exists to help homeowners explore alternatives to foreclosure.

Your role as foreclosure trustee is to ensure that each foreclosure you conduct is completed in good faith and in full compliance with the law. Because Washington State law allows foreclosure without court oversight, you are the party most responsible for ensuring that foreclosures are done properly. Consequently, I ask you to suspend all foreclosures in which you have not yet confirmed that all foreclosure-related documents were lawfully signed, that the chain of ownership is clear and has been revealed to you in full, and that state consumer protection requirements have been followed.

Our Consumer Protection Division has already begun investigations regarding several trustees and I would ask for your cooperation when you are contacted. I have also directed our legal team to survey the foreclosure trustees that are not under investigation to determine whether and how they are reforming their practices to comply with the law.

Sincerely,

*Rob McKenna*

ROB MCKENNA
Attorney General

RMM:lra

cc:     Mortgage servicers and sub-servicers

# EXHIBIT "C" ATTACHED

# (HEREUNDER)

MARIA VALENTINA PAVINO
          Plaintiff         )   Case No
                      )
                      )   AFFIDAVIT OF LAURA MATHEWS
            Vs     )
                      )
                      )
        Defendant,     )
HOMECOMINGS FINANCIAL LLC   )
                      )
                      )
                      )

I, Laura Mathews, of legal age and competent to testify, state as follows based on my own personal knowledge understanding and belief and make this Affidavit/ Declaration based on personal knowledge and state as follows under the penalties of perjury under the laws of the People of the state of Washington:

1. I Laura Mathews am a Certified Forensic Loan Auditor Certified with the National Association of Mortgage Underwriters.

2. I certify that on September 28, 2010 I completed a Securitization audit on the property located at 13409 129TH Place NE, Kirkland, WA 98034 Loan # 0474900867.

3. Said Securitization is listed in my report entitled Research Memorandum dated 9/28/2010.

4. Said Securitization Audit tracks the historical assignment into Mortgage Backed Asset Certificate Series.
   a. I have located the Loan in the RALI Series 2007-QH8 Trust.
   b. The loan can be located in the 8-K filing Dated 9/24/2007 ex. 99.1.

5. I verify and attest that said loan is listed as an asset in the Asset-Backed Security Fund RALI Series 2007-QH8 Trust.

Made this _28th_ day of _September_, _2010_.


Laura Mathews

_Laura Mathews_

Certified Forensic Loan Auditor

PO Box 99700

Lakewood, WA 98496


## Notary Statement

State of Washington    }
                       }    ss
County of King         }

**BE IT REMEMBERED,** that on the _28th_ day of _September_ 2010, before me, the undersigned, a Notary Public in and for the state of Washington, personally appeared, Laura Mathews who proved to me to be the same individual who executed the within instrument, and, affirmed that she is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of her knowledge, true and correct.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed My Official seal the day and year last above written.

_DJ Wilson_

Notary Public for _Washington_

Commission Expires on _7/10/12_

DJ WILSON
COMMISSION EXPIRES
NOTARY
--
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

Securitization Memorandum

Equitas Solutions Inc.
PO Box 99700
Lakewood, WA 98496



RESEARCH MEMORANDUM
09/28/2010

Re:   MARIA VALENTINA PAVINO
      13409 129TH PLACE NE
      KIRKLAND, WA 98034

## 1st Trust Deed and Loan:

| | |
|---|---|
| Investor: | Homecomings Financial LLC |
| Loan No.: | 0474900867 |
| Servicer: | |
| Loan Amount: | $404,000.00 |
| Loan Type: | 30 Year Cash-out Refinance 5 year Fixed Option Arm |
| Settlement Date: | 07/26/2007 |
| Maturity Date: | 08/01/2037 |

## 1st TD INVESTMENT VEHICLE(S):

## RALI SERIES 2007-QH8 TRUST

## FACTS AND DISCUSSION

Research for this memorandum consisted of searching the SEC filings for indications the subject loan was securitized into a public investment vehicle. Since each mortgage loan trust, or REMIC, is defined in detail by a PSA or similar agreement, we first find Pooling and Servicing Agreements where the investor was a seller, depositor, sponsor, or originator. REMIC's created shortly after the subject loan's origination and including loans with similar characteristics are candidate investment vehicles. This memorandum names the most likely one or two candidate vehicles.

Securitization Memorandum

The subject loan is listed in RALI SERIES 2007-QH8 TRUST. The loans location is Kirkland, WA 98034, the original balance was $404,000.00, the initial interest rate was 8.375%, the note date is on 07/26/2007 and the Loan Number is 0474900867. These characteristics match the subject loan.

## RESEARCH BASES AND ATTACHMENTS

Maria Pavino
13409 129th Place NE
Kirkland, WA 98034
http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001410213&owner=exclude&count=40
http://www.sec.gov/Archives/edgar/data/1410213/000095013607006284/0000950136-07-006284-index.htm
http://www.sec.gov/Archives/edgar/data/1410213/000141021307000003/0001410213-07-000003-index.htm

http://www.sec.gov/Archives/edgar/data/1410213/000141021307000003/qh8mlsfinal.txt

| | | | |
|---|---|---|---|
| 19719907 | 8.3750 | 404000.0000 | 115.0000 |
| | 8.3750 | 404,000.00 | ZZ |
| | 8.0000 | 1703.28 | 1 |
| | 9.9500 | 1703.28 | 80 |
| KIRKLAND        WA 98034 | 9.5750 | 07/26/07 | |
| 0474900867 | 0.0000 | 09/01/07 | 00 |
| 0474900867 | 0.0000 | 08/01/37 | 0.0000 |
| 0 | 2.2500 | 08/01/12 | 08/01/12 |
| E22/G01 | 1.8750 | 09/01/12 | 09/01/12 |
| 15 | 0.0000 | 7.5000 | 0.0000 |
| A | 0.0000 | 1 | 12 |
| 360 | 1MT | 0.0000 | 0.0000 |
| 1.5750 | S | N | 0.1250 |
| 0.0000 | S | N | 0.1250 |
| 0.0000 | 5 | 0 | |
| 0.0000 | 05 | 00 | |
| | O | 0.0000 | |

## CONCLUSION

The subject loan appears to have been securitized into RALI SERIES 2007-Q8 H8 TRUST.

---

[1] **Form 10-K** is an annual report which provides a comprehensive overview of the company for the past year. The filing is due 90 days after the close of the company's fiscal year, and contains such information

Securitization Memorandum

as company history, organization, nature of business, equity, holdings, earnings per share, subsidiaries, and other pertinent financial information.

[2] **Form 424B5** is a form of Prospectus that discloses information in the forms **424B2** and **424B3**. **Form 424B2** is a form of Prospectus filed in connection with a primary offering of securities on a delayed basis which includes the public offering price, description of securities and specific method of distribution. **Form 424B3** is a form of Prospectus that reflects facts or events that constitute a substantive change from or in addition to the information set forth in the last form of prospectus filed with the SEC.

[3] **Form 15-15D** is a certification of termination of registration of a class of security under §12(g), or notice of suspension of duty to file reports pursuant to §13 and §15(d) of the Securities Exchange Act. §13 and §15(d) initial filing.

Equitas Solutions, Inc.



# Certified Forensic Loan Auditor (NAMU®-CFLA)

is hereby granted to

## Laura L. Mathews

to certify that he/she is a member of NAMU® in good standing.

Member #: 1480239
Active Member since: August 3, 2010

_NAMU® Membership Director_

**IMPORTANT LEGAL NOTICE:** NAMU® certifies that you have successfully completed a 32-hour in-person seminar performed by California-Based business-to-business litigation support company. Certified Forensic Loan Auditors, LLC. In addition, NAMU® certifies that you have successfully passed a criminal/sex offender background check and agreed to NOT solicit homeowners directly, unless you are a licensed attorney. This 32-hour seminar is strictly intended to provide professional development "how-to" training, and does not imply any State or Federal Government affiliation. Furthermore, this training does not imply nor encourage trainees to offer foreclosure relief/prevention assistance services directly to homeowners, as it is illegal in many states for loan-modification consultants and businesses to charge up-front fees for their services. Additionally, many states now require individuals and businesses offering mortgage-foreclosure consulting, loan-modification and foreclosure-assistance services to post a $100,000 bond. Please note Certified Forensic Loan Auditors, LLC. is exclusively a business-to-business litigation support company, and does NOT work directly with home owners/borrowers in foreclosure. Also, NAMU® is NOT owned or operated by Certified Forensic Loan Auditors, LLC.

# EXHIBIT "D" ATTACHED

# (HEREUNDER)

MARIA VALENTINA PAVINO
    Plaintiff   ) Case No
          )
          ) AFFIDAVIT OF LAURA MATHEWS
       Vs  )
          )
          )
    Defendant,  )
HOMECOMINGS FINANCIAL LLC )
          )
          )
          )

I, Laura Mathews, of legal age and competent to testify, state as follows based on my own personal knowledge understanding and belief and make this Affidavit/ Declaration based on personal knowledge and state as follows under the penalties of perjury under the laws of the People of the state of Washington:

1. I Laura Mathews am a Certified Forensic Loan Auditor Certified with the National Association of Mortgage Underwriters.

2. I certify that on September 28, 2010 I completed a Forensic audit on the property located at 13409 129TH Place NE, Kirkland, WA 98034 Loan # 0474900867.

3. Said Forensic is listed in my report entitled Forensic Audit Report dated 9/28/2010.

4. Said Forensic Audit summarizes the fraud and predatory lending violation within said loan.

    a. SUMMARY:

    b. Total TILA Violations: 6

    c. RESPA Violations: 3

    d. Predatory Lending Violations: 13

Maria Pavino received a loan from Homecomings Financial on July 26, 2007 in the amount of $404,000.00 the loan is a 5 year fixed Option Arm Payment Feature 1 month MTA. The Loan is a Cash-out Refinance Adjustable Rate Note due in 30 years.  The loan is for $404,000.00 amortized over 30 years in an initial start rate of 8.375% for 5 years and then can adjust every month after with a 3 year prepayment penalty and a CLTV of 80%/90%. The payment feature is an Option Arm, this loan program is and adjustable rate mortgage with flexibility of making one of several possible payments on the mortgage every month. The homeowner has the option of the minimum payment, the interest only payment or the fully amortized 15 year payment.

Option ARM loan programs are only right for the homeowner if they are intending to own their property for a short time and prefer affordability and flexibility in their monthly payments.  However if they select the minimum payment option (which most do) the homeowner should be prepared for a sudden increase in their monthly payments thereafter. The initial interest rate is 8.375% the rate and payment will adjust after 5 years the first adjustment cannot be greater than 9.95%.  The payment and interest rate can adjust every month, by adding 2.25% to the current MTA 12 month index rate.  The margin is 2.25% the cap or maximum rate is 9.95%.

The initial <u>minimum</u> payment is $1,703.28 (3% interest rate), if the Minimum Payment is not sufficient to cover the interest due under the Note, the difference will be added to the Principle balance of the Note.  By paying the Minimum Payment the homeowner would end up upside down in the Mortgage this payment feature allows the homeowner to Neg-Am up to 115% of the Original Principal Balance which would be $464,000.00 a $60,000.00 increase from the original balance.

The homeowner could potentially pay the minimum payment up to 10 years meaning the homeowner could pay a total of $204,393.60 towards the Note without reducing the balance but instead increasing the balance.

Made this _28th_ day of _September_, _2010_.


Laura Mathews

_Laura Mathews_

Certified Forensic Loan Auditor

PO Box 99700

Lakewood, WA 98496




## Notary Statement

State of Washington    }
                       }    ss
County of King         }

**BE IT REMEMBERED,** that on the _28th_ day of _September_ 2010, before me, the undersigned, a Notary Public in and for the state of Washington, personally appeared, Laura Mathews who proved to me to be the same individual who executed the within instrument, and, affirmed that she is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of her knowledge, true and correct.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed My Official seal the day and year last above written.

_DJ Wilson_

Notary Public for _Washington_

Commission Expires on _7/10/12_

**Prepared for:**

## John Sterbick – Attorney

**Borrower(s):**

**Maria Pavino**

**Property:**

**13409 129th Place NE, Kirkland, WA 98034**



# FORENSIC AUDIT REPORT

Maria Pavino

Equitas Solutions Inc.
PO Box 99700
Lakewood, WA 98496
**Laura Mathews**
**9/28/2010**

# Certified Forensic Loan Auditor (NAMU®-CFLA)



is hereby granted to

## Laura L. Mathews

to certify that he/she is a member of NAMU® in good standing.

Member #: 1480239

Active Member since: August 3, 2010

_NAMU® Membership Director_

**IMPORTANT LEGAL NOTICE:** NAMU® certifies that you have successfully completed a 32-hour in-person seminar performed by California-Based business-to-business litigation support company. Certified Forensic Loan Auditors, LLC. In addition, NAMU® certifies that you have successfully passed a criminal/sex offender background check and agreed to NOT solicit homeowners directly, unless you are a licensed attorney. This 32-hour seminar is strictly intended to provide professional development "how-to" training, and does not imply any State or Federal Government affiliation. Furthermore, this training does not imply nor encourage trainees to offer foreclosure relief/prevention assistance services directly to homeowners, as it is illegal in many states for loan-modification consultants and businesses to charge up-front fees for their services. Additionally, many states now require individuals and businesses offering mortgage-foreclosure consulting, loan-modification and foreclosure-assistance services to post a $100,000 bond. Please note Certified Forensic Loan Auditors, LLC. is exclusively a business-to-business litigation support company, and does NOT work directly with home owners/borrowers in foreclosure. Also, NAMU® is NOT owned or operated by Certified Forensic Loan Auditors, LLC.

# **TABLE OF CONTENTS**

Advisory Letter _____

Introduction_____

Report Summary _____

Summary of Loan Terms_____

Financial & Underwriting Analysis_____

Truth in Lending Act Analysis _____

HOEPA Analysis _____

RESPA Analysis _____

Predatory Indicators _____

Potential Additional Claims Analysis _____

       Discrimination

       Fraud

       Foreign Language Translation

       Breach of Contract

       Breach of Implied Covenant of Fair Dealing

       Breach of Fiduciary Duty

       Unjust Enrichment

       Unconscionability

       Civil Conspiracy

       Unfair/Deceptive Business Practices

Other Claims & Recommended Legal Research _____

John Sterbick
1010 South "I" Street
Tacoma, WA 98405
(253) 383-0140

RE:     Forensic Audit for John Sterbick

Loan:   #0474900867 1st

#0021446455 2nd

Dear Audit Recipient:

The loan transaction for the above-referenced borrower/property has been manually audited [1]for violations of the Truth in Lending Act [16 U.S.C. §1601] ("TILA"), Home Ownership Equity Protection Act [12 C.F.R. 226.32 *et seq.*] ("HOEPA"), the Real Estate Settlement Procedures Act [12 U.S.C. § 2601] ("RESPA"), and to the extent applicable, violations of other state and federal laws discussed below.

This report was based exclusively on the documentation provided.  It was also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements.  While we believe that our assumptions provided a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings.

The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient.  We do not, in providing this report, accept or assume responsibility for any other purpose.

Sincerely,

**Laura Mathews**

---

[1]  Please note that a complete mortgage servicing audit (i.e., audit for RESPA and/or breach of contract violations for the entire servicing history of the loan) is not included in this audit; QWR recommended before such audit and be accomplished.

## INTRODUCTION

### Interested Parties:

| ORIGINAL MORTGAGE LENDER/TABLE FUNDER: | ESCROW/TITLE: | MORTGAGE NOMINEE/BENEFICIARY: |
|---|---|---|
| Homecomings Financial LLC. Homecomings Financial Network, Inc. 188 106th Ave. NE Ste 600 Bellevue, WA 98004 | TransNation Title Ins. Company 225 108th Ave. N.E. Ste. 105 Bellevue, WA 98004 | MERS Mortgage Electronic Registration Systems, Inc. P.O. Box 2026 Flint, MI 48051 |
| MORTGAGE BROKER: | MORTGAGE TRUSTEE | SECURITIZATION |
| A+ Mortgage, Inc. 6240 Tacoma Mall Blvd. Suite 316 Tacoma, WA 98409 | TransNation Title Ins. Company 225 108th Ave. N.E. Ste. 105 Bellevue, WA 98004 | Likely. 100062604749008670 |

### Documents Provided for Review:

| 1st | 2nd | |
|---|---|---|
| X | | Loan Application (1003) MISSING APPLICATION FOR 2ND LOAN |
| X | | Loan Commitment Letter MISSING COMMITMENT FOR 2ND LOAN |
| X | | Good Faith Estimate MISSING GFE FOR 2ND LOAN |
| X | | Truth in Lending Disclosure Statement MISSING TILA FOR 2ND LOAN |
| X | | (3-day) Notice of Right to Cancel (may not find with Purchase money loans) MISSING 2 COPIES |
| X | | HUD-1 (or HUD-1 A) Settlement Statement MISSING FOR 2ND LOAN |
| X | | Note (with riders or attachments MISSING NOTE FOR 2ND LOAN |
| X | | Deed of Trust MISSING DEED FOR 2ND LOAN |
| X | | Underwriting and Transmittal Summary (Form 1008) MISSING FOR 2ND LOAN |
| X | | Appraisal Report |
| X | | RESPA Servicing disclosure MISSING FOR 2ND LOAN |
| | | Hazard Insurance disclosure MISSING FOR 2ND LOAN |
| X | | Credit score disclosure MISSING FOR 2ND LOAN |
| X | | Lenders Closing Instructions MISSING FOR 2ND LOAN |
| | | Affiliated Business Arrangement Disclosure MISSING FOR 1ST & 2ND LOAN |
| X | | I/O and/or Neg-Am disclosure MISSING DOCUMENTATION FOR 2ND LOAN |
| X | | Arm Disclosure MISSING DOCUMENTATION FOR 2ND LOAN |

4

## REPORT SUMMARY

Total Potential TILA Violations (see p. 10): **6**

Total Potential HOEPA Violations (see p. 12): **0**

Total Potential RESPA Violations (see p. 13): **3**

Total Predatory Lending Violations: (see p. 14): **13**

| CLAIM | CONCLUSION | DETAILS |
|---|---|---|
| Underwriting | FAIL | See p. 8 |
| TILA APR Tolerance Test | PASS | See pp. 10-11 |
| TILA Finance Charge Test | FAIL | See pp. 10-11 |
| TILA Right of Rescission | FAIL | See pp. 10-11 |
| Predatory Indicators | FAIL | See p. 14 |
| Discrimination* | POSSIBLE | See discussion at p. 17 |
| Civil Code § 1632* | N/A | |
| Fraud* | POSSIBLE | See discussion at p. 18 |
| Other State/Common Law Claims* | POSSIBLE | See discussion at p. 18 |

*(Probability of Violations Ratings: No Evidence or Possible)

## Auditor's Summary:

The Homeowner received a loan from Homecomings Financial on July 26, 2007 in the amount of $404,000.00 the loan is a 5 year fixed Option Arm Payment Feature 1 month MTA.

The Loan is a Cash-out Refinance Adjustable Rate Note due in 30 years.  The loan is for $404,000.00 amortized over 30 years in an initial start rate of 8.375% for 5 years and then can adjust every month after with a 3 year prepayment penalty and a CLTV of 80%/90%.

The payment feature is an Option Arm, this loan program is and adjustable rate mortgage with flexibility of making one of several possible payments on the mortgage every month. The homeowner has the option of the minimum payment, the interest only payment or the fully amortized 15 year payment.

Option ARM loan programs are only right for the homeowner if they are intending to own their property for a short time and prefer affordability and flexibility in their monthly payments.  However if they select the minimum payment option (which most do) the homeowner should be prepared for a sudden increase in their monthly payments thereafter.

5

The initial interest rate is 8.375% the rate and payment will adjust after 5 years the first adjustment cannot be greater than 9.95%.  The payment and interest rate can adjust every month, by adding 2.25% to the current MTA 12 month index rate.  The margin is 2.25% the cap or maximum rate is 9.95%.

The initial <u>minimum</u> payment is $1,703.28 (3% interest rate), if the Minimum Payment is not sufficient to cover the interest due under the Note, the difference will be added to the Principle balance of the Note.  By paying the Minimum Payment the homeowner would end up upside down in the Mortgage this payment feature allows the homeowner to Neg-Am up to 115% of the Original Principal Balance which would be $464,000.00 a $60,000.00 increase from the original balance.

The homeowner could potentially pay the minimum payment up to 10 years meaning the homeowner could pay a total of $204,393.60 towards the Note without reducing the balance but instead increasing the balance.

The borrower's received a notice of Trustee's Sale from Quality Loan Service Corp. of Washington on 7/21/2010 with a sale to be held on 10/22/2010.

## SUMMARY OF LOAN TERMS

The **essential loan terms** were found to be as follows:

| | |
|---|---|
| Type of Loan: | **REFINANCE** |
| Loan Origination Date: | **7/26/2007** |
| Amount of Loans: | **$404,000.00** |
| Originating Lender: | **HOME COMINGS FINANCIAL** |
| Loan Broker: | **A+ MORTGAGE, INC.** |
| Current Servicer: | **AURORA LOAN SERVICES AND GMAC** |
| Current Note Holder: | **Likely Securitized** |
| 1st Note (ARM) Terms: | |
| Initial Fixed Rate: | **8.375%** |
| Term of Initial Rate: | **360 MONTHS** |
| Initial Payment: | **$1,703.28** |
| Payment Feature: | **5 YEAR FIXED PAYMENT OPTION ARM 1MO MTA** |
| Index Measure: | **12 MONTH MTA** |
| Index Rate: | **5.0050%** |
| Margin: | **2.25%** |
| Fully Indexed Rate: | **7.2250%** |
| Min/Max Rate: | **2.25%/9.95%** |
| TILA disclosed APR: | **7.891%** |
| Total Closing Costs: | **$12,806.90** |
| Total "Points and Fees"% | **3.170%** |
| Prepayment Penalty: | **3 YEAR** |
| Unsecured Debt Paid off by Refinance: | **$35,963.63** |
| Loan Origination Fees: | **$6,654.69** |
| Loan Discount Fees: | **0** |
| Total Broker Fees: | **$14,056.84** |
| 2nd Note (Fixed) Terms: | |
| Fixed Rate: | **6.63750% / $50,500.00** |
| Term of Loan: | |
| Payment Feature: | |
| TILA disclosed APR: | |
| Total Closing Costs: | **$972.40** |

## **FINANCIAL & UNDERWRITING ANALYSIS**

**Underwriting Standards**

The purpose of an underwriter is to determine whether the borrowers can qualify for a loan and if the borrowers have the ability to repay the loan.  This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, 1040's, W-2's, and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan.  Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount.  Approvals and denials would be made based upon a realistic likelihood of repayment.

**Automated Underwriting Systems**

The underwriter's role in approving loans has been delegated to a support role in the past decade. Automated Underwriting Systems became the normal approval method.  An underwriter or even a loan officer would simply input the data and the Automated System would give an approval or denial. Any documents requested would be gathered and then loan documents drawn and signed.

The real issue with the automated systems is that they were not designed to be the "final word" in approval.  The system approval was designed to be a guide, a preliminary approval and nothing more. After approval was received, the underwriter would then be expected to extensively review the file, closely examining the documents for final approval.

**DISSUSSION:**    Borrower's financial status at the time of the loan is taken from the loan application.  An analysis of borrower's financial status at the time of the loan reveals the following:  The Following figures are based on the information from the Loan Application and have not been verified.

| Gross Monthly Income | Mortgage Payment (PITI) | Other Monthly Debt | Total Monthly Debt | Debt-to-Income ratio |
|---|---|---|---|---|
| $18,851.57 | $2,649.23 | $2,864.25 | $5,513.48 | 14%/29% |

**CONCLUSION:**  Normal underwriting practices include analysis for a 28/36% debt-to-income ratio.  During 2003 to 2006, subprime lending involved higher DTI ratios, from 33/38% to 38/50%.  I have reviewed the documentation supplied by the Lender, the Note was a Stated Income Stated Asset Note.  The Lender did not verify the homeowner's income through paystubs, W2's, Tax Returns or a 4506-T form.

8

The <u>minimum payment was used to calculate the DTI on the application</u> of $1,703.28 plus Taxes, Insurance and the financing for the 2nd Note for a total payment of $2,649.23.

The Interest Only Payment would be $2,819.58 plus TX, INS and 2nd is $3,765.53. The fully index rate of 7.255% would put the combined payment at $3,703.31 both of these payments put the DTI at 20%/35%.

I was unable to review the credit report, income/employment documentation to verify the debt/income ratios. The purpose of an underwriter is to determine whether the borrowers can qualify for a loan and if the borrowers have the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, W-2's and a Verification of Employment and Income on the borrowers.  If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan.  Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount.  Approvals and denials would be made based upon a realistic likelihood of repayment.

Risk layering is the concept of borrowers having multiple elements of risk in any one loan. Risk would be greater as the different factors that lenders should be concerned about were found in each loan.  The more layers of risk, the greater the likelihood of default.  Layers of risk in this loan include...............

1. Stated Income

2.  Equity Stripping

3.  Prepayment Penalty

4.  Lack of due diligence in underwriting

5.  ARM loan

6.  Interest Only

7.  Negative Amortization

8. Excess Fees/Charges

9. Yield Spread Premium

10. High LTV

11. Equity Leveraging

12. Less than adequate reserves verified

# TRUTH IN LENDING ACT ANALYSIS

**APPLICATION:** The TILA applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments. 15 U.S.C. §§ 1601-1666j.

| Pass | Fail | | | |
|------|------|---|---|---|
| | X | Notice of Right to Cancel (2 copies per borrower; filled out completely). 12 C.F.R. § 226.23(b). MISSING 2 COPIES | | |
| X | | TIL Disclosure Statement provided. 12 C.F.R. §§226.17, 226.18 | | |
| | X | Payment Schedule correctly identified on TIL. 12 C.F.R. §§226.18(g).(h). | | |
| X | | Interest Rate consistent and properly disclosed: Loan app-GFE-Commitment-TIL, variable rate. 12 C.F.R. § 226.17-18. | | |
| X | | Delivered good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application. 12 C.F.R. §§ 226.19(a). | | |
| | X | "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) provided within 3 days of application. [Or equivalent disclosure – see 12 C.F.R. § 226.19(b)]. | | |
| X | | Interest-only payment feature adequately disclosed 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17-18. | | |
| X | | Negative-amortization payment feature adequately disclosed. 15 U.S.C. §§ 1638, C.F.R. § 226.17-18. | | |
| X | | Itemization of amount financed. C.F.R. § 226.18. [RESPA-GFE may be substituted]. | | |
| | X | Property/Hazard Insurance disclosure provided (choice by consumer). C.F.R. § 226.4(d) (2). | | |
| X | | Prepayment Penalty disclosed. C.F.R. § 226.18(k). | | |
| X | | **APR Calculation**<br><br>See Note 1 below for further discussion. | 1st Lien Result<br>Disclosed: **7.891%**<br>Vs.<br>Actual: **7.912%**<br>Difference= ≤**.021%** ≥ | 2nd Lien Result<br>Disclosed:<br>Vs.<br>Actual:<br>Difference= ≤ ≥ |
| | X | **Finance Charge Calculation**<br><br>See Note 2 below for further discussion. | 1st Lien Result<br>Disclosed: **$394,427.81**<br>Vs.<br>Actual: **$395,380.49**<br>Difference= ≤**$952.68** ≥ | 2nd Lien Result<br>Disclosed:<br>Vs.<br>Actual:<br>Difference = ≤ ≥ |
| | X | All disclosures accurately reflect the legal obligation between the parties; 15 U.S.C. §§ 1638, 12 C.F.R. § 226.17©. | | |

***Total Potential TILA Violations: 6***

**FURTHER RECOMMENDATIONS:**

**POTENTIAL REMEDIES FOR VIOLATIONS:** Where a material disclosure was not given or inaccurate (APR, finance, amount financed, payment schedule, or total of payments), or consumer was not provided with proper notice of right to cancel, the right of rescission is extended to 3 years. Statutory (up to $2,000) and actual damages, as well as attorney's fees, may also be available for the violations noted.

## TILA NOTATIONS

Under the Truth in Lending Act ("TILA"). Rescission rights arise when: (1) the transaction is a consumer credit transaction; (2) in which a non-purchase lien or security interest is or will be placed; and (3) on the consumer's principal dwelling. In a rescindable transaction, each consumer must be given a copy of the TILA disclosure statement withal "material" information correctly disclosed and notice of a three-day right to rescind. If these material disclosures are not properly provided, the three-day right to rescind is extended until one of the following events occurs:  (1) all materials disclosures are correctly given and a new three day notice of cancellation, (2) the expiration of three years after consummation of the transaction; (3) the transfer of all of the consumer's interest in the property; or (4) the sale of the property.  All persons entitled to rescind under TILA must receive two copies of the rescission notice rights and on copy of the material disclosures at or before closing. The notice of rescission must provide the following information: (1) the retention or the acquisition of a security interest in the consumer's principle dwelling; (2) the consumer's right to rescind; (3) how to exercise the right to rescind with a form for that purpose, designating the address of the creditor's place of business; (4) the effects of rescission; and (5) the date the rescission period expires.

1.  **Annual Percentage Rate Tolerances and Right of Rescission**

An APR deviation is a material violation permitting the right of rescission if: (a) it was a refinance, (b) within 3 years of the transaction, and (c) outside the tolerances set forth below.

12 CFR § 226.22(a)(2) provides: "As a general rule, the annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 (.125%) percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section." Under 12 CFR 226.22 (a)(3): "In an irregular transaction, the annual percentage rate shall be considered accurate if it is not more than 1/4 of 1 (.25%) percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section."

2.  **Finance Charge Tolerances and Right of Rescission**

12 CFR § 226.18(d) requires the disclosure of the finance charge amount.  For purposes of "mortgage loans" 12 CFR § 226.18(d) (1) provides: "In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge: (I) is understated by no more than $100; or (ii) is greater than the amount required to be disclosed." Statutory and actual damages are available for this violation.

A finance charge deviation is a material violation permitting the right of rescission if: (a) it was a refinance, (b) within 3 years of the transaction, and (c) outside the tolerances set forth below.

12 CFR § 226.23(g) provides: "Tolerances for accuracy.—(1) One-half of 1 percent tolerance. Except as provided in paragraphs (g)(2) and (h)(2) of this section, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (I) is understated by no more than ½ of 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed. (2) One percent tolerance. In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by § 226.32), if there is no new advance and no consolidation of existing loans, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (I) is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed."

15 U.S.C. § 1635 (I) also provides: "Rescission Rights In Foreclosure. – (2) Tolerance for Disclosures. – Notwithstanding section 106(f), and subject to the time period provided in subsection (f), for the purposes of exercising any rescission rights after the initiation of any judicial or non judicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, The disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this title."

11

## HOEPA ANAYLYSIS

<u>APPLICATION:</u>  Neither statute like applies as the estimated APR [~xx] would not exceed 8% over the comparable yield on treasury securities [~10], nor do the "total points and fees" exceed 8% or 6%, respectively, of the loan amount.  NOT A HOEPA LOAN

| Pass | Fail | |
|------|------|---|
| | | APR disclosed. 12 CFR 226.32(c)(2) |
| | | 3 days prior to closing, the APR and disclosure statement similar to the following: "You are not required to complete..." (HOEPA). |
| | | 3 day prior to closing, disclosure: "CONSUMER CAUTION AND HOME OWNERSHIP CONSELING NOTICE..." |
| | | Disclosed the amount of the borrower's regular monthly payment.  12 CFR 226.32(c) (3). |
| | | If variable, includes a statement that the interest rate and monthly payment may increase and the maximum payment that could be reached.  12 CFR 226.32(c) (4). |
| | | No balloon payments prior to ten years.  12 CFR 226.32(d) (1) (i)-(iii). |
| | | Disclosed amount of any balloon payment 12 CFR 226.32 (c) (3). |
| | | No prepayment penalty after first 5 years, source of funds is not refinance by creditor, and consumers total monthly is no more than 50% of DTI. 12 CFR 226.32(d) (7). |
| | | No increase in the interest rate in the event of default. 12 CFR 226.32(D) (4). |
| | | No negative amortization. 12 CFR 226.32(d) (2). |
| | | No refinance within one year. 12 CFR 226.34 |
| | | No prepaid payments. 12 CFR 226.321(d) (3). |
| | | Engaging in a pattern or practice of extending such credit to a borrower based on the borrower's collateral rather than considering the borrower's current and expected income, current obligations, and employment status to determine whether the borrower is able to make the scheduled payments to repay the obligation, is in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and see also, Regulation Z, 12 C.F.R. § 226.32. |
| | | If refinance transaction, disclosed total amount borrowed and if the loan amount includes premiums or other charges for optional credit insurance or debt cancellation coverage, that fact shall be stated. 12 CFR 226.32(c) (5). |

*Total Potential HOEPA Violations:*

<u>POTENTIAL REMEDIES FOR VIOLATIONS:</u>  All TILA remedies, plus all finance charges and fees if "material" violation, pursuant to 15 U.S.C. § 1640(a) (4).

## REAL ESTATE SETTLEMENT PROCEDURES ACT ANALYSIS

**APPLICATION:** The RESPA applies because lender regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property. 12 U.S.C. §§ 2601.2617.

| Pass | Fail | |
|------|------|---|
| X | | Informed borrower of intention to transfer the servicing of the loan and/or failed to inform the borrower of the actual transfer within fifteen (15) days before the effective date of the transfer. 24 CFR § 3500.21. |
| X | | Did not require deposit of funds in escrow in excess of the statutorily permitted amounts. 24 CFR § 3500.17 |
| N/A | | Purchase Money: Provided the Special Information Booklet explaining the settlement costs within three (3) business days after consumer submitted loan application. 24 CFR § 3500.6 |
| X | | No fees charged for preparation of the settlement statement, escrow account statement, and/or the TILA disclosure statement. 24 CFR § 3500.12. |
| | X | Disclosed all affiliated business arrangements. 24 CFR § 3500.15. MISSING |
| | X | Did not give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums. 24 CFR § 3500.14. BROKER YSP |
| TBD | | Properly and timely paid for property taxes, insurance and other charges for which Defendants are collecting within an escrow impound account; or other servicing violations. 24 CFR § 3500.17. |
| X | | HUD-1 provided at closing (1 day before if requested) and accurate. 24 CFR § 3500.8(b) |
| | X | No fees charged in excess of the reasonable value of goods provided and/or services rendered. |
| N/A | | Purchase Money: Seller did not impose use of particular service provider. 24 CFR § 3500.16 |

*Total Potential RESPA Violations: 3*

**FURTHER RECOMMENDATIONS:** QWR/discovery re mortgage servicing for potential servicing violations or breach of contract.

**POTENTIAL REMEDIES FOR VIOLATIONS:** Actual damages, statutory (up to $1000 if show pattern and practice), and treble damages for excessive portion of fees (below), plus attorney's fees and costs for violations noted.

The following are **suspect or excessive closing costs/fees** that may be actionable for treble damages pursuant to 12 U.S.C. § 2607: **Loan Origination Fee $6,654.69, YSP $6,156.96, Processing Fee $595.00**

## **PREDATORY LOAN INDICATORS**

"Predatory lending" is a general term used to describe unfair, deceptive, or fraudulent practices of lenders during the loan origination process.  Predatory lending is often a combination of several factors that can only be evaluated in the context of the overall lending transaction. Typically, no single factor can be relied upon to consider it a predatory loan.

A large number of agencies and consumer organizations recognize predatory lending, including, for example, the Department of Housing and Urban Development, federal Deposit Insurance Corporation, National Consumer Law Center, California Department of Real Estate, Fannie Mae, National Association of Consumer Advocates, Association of Community Organizations for Reform Now, National Home Equity Mortgage Association, and Center for Responsible Lending.

The Predatory lending factors present in the subject transaction were found to be as follows:

| Pass | Fail | |
|------|------|---|
| TBD | | Solicitation for refinance. |
| | X | Mortgage broker and corresponding lender involved. |
| | X | Borrower was a minority and/or the transaction was conducted in a foreign language. |
| | X | Loan-to-value ratio above 80%. |
| X | | Debt-to-income ratio above 28/36%. |
| | X | Teaser rate involved. |
| | X | Interest rate on 1st was more than 2 points above: 6.08% (2.77 margin) [average US 5/1 ARM rate] or 6.4% [average 30-year fixed]. (Source: Freddie Mac 1/2003-12/2006). |
| | X | Excessive closing Costs/Fees. |
| | X | Prepayment Penalty. |
| | X | Interest-Only Payments. |
| | X | Negative Amortization Payments. |
| | X | Broker Compensation ≥ 2% (including yield spread premium). |
| | X | Loan Flipping – refinance within 3 years of previous loan. |
| X | | Balloon payments. |
| | X | Unsecured Debt Shifted to Secured (i.e., credit cards). |
| X | | Unnecessary insurance and other products offered in closing. |
| N/A | | Mandatory arbitration clause in Note. |
| TBD | | Bait & Switch – e.g., borrower initially offered lower rate than final Note. |
| | X | Other unfair, deceptive, or fraudulent practices in transaction. |

***Total Predatory Indicators: 13***

## PREDATORY LOAN ANALYSIS

**Predatory Lending**

The terms "abusive lending" or "predatory lending" are most frequently defined by reference to a variety of lending practices. Although it is generally necessary to consider the totality of the circumstances to assess whether a loan is predatory, *a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered.*

While such disregard of basic principles of loan underwriting lies at the heart of predatory lending, a variety of other practices may also accompany the marketing of such credit, Some Predatory Lending Practices found in this loan.

*Negative Amortization*
Loans where the borrower is often told that the payment and rate are actually such that the balance on the loan can increase monthly.  See above analysis.

*Non-English Speaking Borrowers*
Persons who don't speak or read English and all the conversations are held in either English or their native language.  Borrowers cannot understand the loan documents and have no idea what they are signing.

*Excessive Fees and Rates*
Requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

*Loan Flipping & Equity Stripping*
Repeated refinancing of borrowers into loans that have no tangible benefit to the borrower. Can be the same lender or different ones.  Loans and refinances whereby equity is removed from the home through repeated refinances, consolidation of short term debt into long term debt, negative amortization or interest only loans whereby payments are not reducing principle, high fees and interest rates.  Eventually, borrower cannot refinance due to lack of equity.

*Shifting Unsecured Debt into Mortgage*
Mortgage lenders badger homeowners with advertisements and solicitations that tout the "benefits" of consolidating bills into a mortgage loan.  The lender fails to inform the borrower that consolidating unsecured debt such as credit cards and medical bills into a mortgage secured loan by the home is a bad idea.  If a person defaults on an unsecured debt, they do not lose their home.  If a homeowner rolls their unsecured debt into their mortgage loan and default on their mortgage payments, they can lose their home.  Furthermore, since unsecured debt generally is paid off between three and five years, shifting unsecured debt into a mortgage loan extends the payoff period to 15 to 30 years.

Paying off unsecured debt with a mortgage loan also necessarily increases closing costs because they are often calculated on a percentage basis, thereby increasing the loan balance. Whereas the old total monthly household debt payments may in some cases be less than the monthly payments on the new mortgage loan, the monthly mortgage payments are often more than the previous mortgage payments, thus exacerbating the risk that the homeowner will lose the home to foreclosure.

### High Loan to Value Loans

Loans offered to a borrower having little of no equity in the home. Usually adjustable rate mortgages that the borrower will not be able to refinance out of when the rate adjusts due to lack of equity.

### Fraudulently Caused to Execute Loan Documents

Adjustable rate mortgage loan was an inter-temporal transaction on which Plaintiffs had only qualified at the initial teaser fixed rate, and could not qualify for the loan once the interest rate terms changed in two years.

### Deception, Fraud, Unconscionable

Is marketed in a way that fails to fully disclose all material terms. Includes any terms or provisions which are unfair, fraudulent or unconscionable. Is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, adjustable rate loans, and negative amortization and HOEPA loans.

### Stated or No Income/No Assets

Is based on a loan application that is inappropriate for the borrower. For instance, the use of a stated-income loan application from an employed individual who has or can obtain pay stubs W-2 forms and tax returns.

### Lack of Due Diligence in Underwriting

Is underwritten without due diligence by the party originating the loan. No realistic means test for determining the ability to repay the loan. Lack of documentation of income or assets, job verification. Usually with Stated Income or No documentation loans, but can apply to full documentation loans.

### Inappropriate Loan Programs

Is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower qualifies. Can include prime borrowers who are placed into subprime loans, negative or interest only loans. Loan terms whereby the borrower can never realistically repay the loan.

### Contractual Interference

By paying the broker a Par Premium or YSP to bring a loan to a lender, and the loan having an interest rate higher than what the borrower could have qualified for, the lender has engaged in a practice of interfering with the Fiduciary Duty of the broker to the borrower.

DISCUSSION: Summary of Underwriting Decision by Auditor

The Auditor has reviewed the approval process of this loan. I find that the underwriting process was flawed in that it did not take into consideration the ability of the borrower to repay this loan with a realistic means test. The

**borrowers signed a 4506-T Income Tax Disclosure form and an IRS form 8821. These forms allow the lender to check the income of the borrowers.  Failure to do so was a lack of due diligence on the part of the lender regarding underwriting standards and the ability to repay the loan, based on the loan program the lender would have to decline the loan. (Other areas of applicability regarding the 4506-T could be considered breach of the lenders contractual duty to conduct the transaction in good faith and through fair dealing: gross negligence or breach of fiduciary duty as a licensed professional under their lending license if applicable).**

<u>**POTENTIAL ADDITIONAL CLAIMS ANALYSIS**</u>
(Probability of Violations Ratings: No Evidence or Possible)
**Note: Federal laws may preempt certain state claims.**

**Equal Credit Opportunity Act (discrimination)** - **No Evidence**

The Equal Credit Opportunity Act provides at Sec.202.1 – Authority, scope, purpose:

> (b) Purpose.  The purpose of this regulation is to promote the availability of credit to all
> Creditworthy applicants without regard to race, color, religion, national origin, sex,
> Marital status, or age (provided the applicant has the capacity to contract); to the fact that
> All or part of the applicant's income derives from a public assistance program; or to the
> Fact that the applicant has in good faith exercised any right under the Consumer Credit
> Protection Act.  The regulation prohibits creditor practices that discriminate on the basis
> Of any of these factors.  The regulation also requires creditors to notify applicants of
> Action taken on their applications; to report credit history in the names of both spouses on
> An account; to retain records of credit applications; to collect information about the
> Applicant's race and other personal characteristics in applications for certain dwelling-
> Related loans; and to provide applicants with copies of appraisal reports used in
> Connection with credit transactions.

Additionally, at Sec. 202.4 – General Rule Prohibiting Discrimination:

> 1.   Scope of section.  The general rule stated in Sec.202.4 covers all dealings, without
> Exception, between an applicant and a creditor, whether or not addressed by other
> Provisions of the regulation.  Other sections of the regulation identify specific practices
> That the Board has decided are impermissible because they could result in credit
> Discrimination on a basis prohibited by the act.  The general rule covers, for example,
> Application procedures, criteria used to evaluate creditworthiness, administration of
> Accounts and treatment of delinquent or slow accounts.  Thus, whether or not specifically
> Prohibited elsewhere in the regulation, a credit practice that treats applicants differently
> On a prohibited basis violates the law because it violates the general rule.  Disparate
> Treatment on a prohibited basis is illegal whether or not it results from a conscious intent
> To discriminate.  Disparate treatment would be found, for example, where a creditor
> Requires a minority applicant to provide greater documentation to obtain a loan than a

Similarly situated nonminority applicant.  Disparate treatment also would be found where
A creditor waives of relaxes credit standards for a nonminority applicant but not for a
Similarly situated minority applicant.  Treating applicants differently on a prohibited basis
Is unlawful if the creditor lacks a legitimate nondiscriminatory reason for its action, or if
The asserted reason is found to be a pretext for discrimination.

**DISCUSSION: No direct evidence of discrimination, but the loan terms offered by this lender
may be less than favorable: recommend investigation into borrowers credit, income etc.**


**Fraud -** _____    *Possible*

Liability for actual fraud is limited to acts committed by or with the connivance of a party to a contract
With the intent to deceive another party to the contract and induce that party to enter into the contract
Provides that:

    (a)   A party to a contract may rescind the contract in the following cases:

    (1)   If the consent of the party rescinding, or of any party jointly contracting with him, was given by
Mistake or obtained through duress, menace, fraud, or undue influence, exercised by or with the
Connivance or the party as to whom he rescinds, or of any other party to the contract jointly interested
With such party.

**DISCUSSION: It appears the lender approved the loan based on STATED income and no assets
verification.  The lender has a fiduciary responsibility to the borrower to perform their due
diligence before extending credit.  However, the lender did NOT perform their due diligence
by confirming the borrower's ability to make his monthly payments over the lifetime of the
loan.  Recommend investigation into the loan programs presented to the borrower from the
beginning of the transaction.**


**Fraud in the factum**
**Fraud in the Factum is a type of fraud where misrepresentation causes one to enter a
transaction without accurately realizing the risks, duties, or obligations incurred.  Black's
Law Dictionary (2nd Pocket ed. 2001 pg. 293).  This can be when the maker of drawer of a
negotiable instrument, such as a promissory note or check, is induced to sign the
instrument without a reasonable opportunity to learn of its fraudulent character or essential
terms.  Determination of whether an act constitutes fraud in the factum depends upon
consideration of "all relevant factors."  Fraud in the factum usually voids the instrument
under state law and is a real defense against even an holder in due course.**


**Other State/Common Law Claims-See Below**                                    *Possible*

<u>Breach of Contract</u>

**Need to evaluate entire mortgage-servicing history for breach of contract – QWR
RECOMMENDATION.**

<u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

The law provides that in every contract, there is an implied duty of good faith and fair dealing between the parties. This implied covenant imposes the requirement "that neither party will do anything, which will injure the right of the other to receive the benefits of the agreement."

<u>Breach of Fiduciary Duty</u>

In certain situations, courts have implicitly recognized imposing fiduciary duties on lenders based on policy grounds.  For instance, a lender may be considered a fiduciary when it "takes control" of the borrower, or when "moral, social, personal, or domestic" relationships are shown to exist between the parties.  (Cases cited in American Bar Association – Business Tort Litigation (2nd Ed.)  Further, when the lender undertakes to perform a task on behalf of the borrower, then it is likely that the lender has made itself a fiduciary for the borrower, based on the law of agency.
Often times, when a loan officer or mortgage broker is helping to arrange a loan for a borrower, that loan officer/mortgage broker is, in reality, acting as the agent for both the lender and borrower.

The fiduciary duty of the lender is a responsibility to perform their own diligence to determine if a customer is being placed in a loan that is legal, properly disclosed, is the best loan for the consumer given their financial circumstance and affordable over the life of the loan if present financial positions hold steady.  If the <u>lender knew or should have known that the Borrower has a likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harm's way).</u>

When a loan transaction occurs, any missteps in the loan transaction process can lead to dire consequences for the borrower.  It is for this reason that the law should impose more liberally a fiduciary relationship between borrower and lender, especially in the residential home loan marketplace where the average borrower is not as sophisticated as the lender.  If fiduciary relationships were more liberally imposed, we would likely see lenders implementing more safeguards before underwriting a loan.

If the lender is aware that the borrowers would be better off with another type of loan that the lender offers, they have violated their duty to the consumers and such act of deception would be likely be considered fraud on the consumer and predatory.

➢   Brokers owe a fiduciary duty to borrowers.

➢   Liability potential for lender may exist if borrower can prove either that: (1) a "special relationship or circumstance" existed, (2) the lender "directly ordered, authorized or participated in" the broker's tortuous conduct, or (3) that broker acted as lender's agent for the transaction.

<u>Unjust Enrichment</u>

Unjust enrichment is a general equitable principle that no person should be allowed to profit at another's expense without making restitution for the reasonable value of any property, services, or other benefits that have been unfairly received and retained.  The elements to prove this claim are threefold.  First, the plaintiff must have provided the defendant with something of value while expecting compensation in return.  Second, the defendant must have acknowledged, accepted, and benefited from whatever the plaintiff provided.  Third, the plaintiff must show that it would be inequitable or unconscionable for the defendant to enjoy the benefit of the plaintiff's actions without paying for it.

<u>Unconscionability</u>

19

The court has the power to refuse to enforce a contract or a clause in a contract that is unconscionable when made.

The common law contract defense of unconscionability could be applied to stop a foreclosure when either the mortgage terms are unreasonably favorable to the lender or certain aspects of the transaction render it unconscionable.[2]

---

[2]*In re Maxwell*, 281 B.R. 101 (banker. D. Mass. 2002); Hager *v. American Gen. Fin. Inc.*, 37 F.Supp.2d 778 (1999).  For example, a Connecticut court found a second mortgage contract to be unconscionable based on the facts that:

Civil Conspiracy

A civil conspiracy of collusion is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.

## OTHER CLAIMS & RECOMMENDED LEGAL RESEARCH
**Note: Federal laws may preempt certain state claims**

## Fair Debt Collection Practices Act (Fed. & State)

The FDCPA, 15 U.S.C. § 1692 et seq., a United States statute added in 1978 as Title VIII of the Consumer Credit Protection Act, broadly defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  The Act prohibits certain types of "abusive and deceptive" conduct when attempting to collect debts.

## UCC Provisions

UCC 3-309.  ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT. 9. ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT.

(a) A person not in possession of an instrument is entitled to enforce the instrument if (I) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument.

§ 3-301.  PERSON ENTITLED TO ENFORCE INSTRUMENT.

"Person entitled to enforce" an instrument means (I) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-

309 or 3-418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

---

- The defendant had limited knowledge of English, was uneducated and did not read very well;
- The defendant's financial situation made it apparent she could not reasonably expect to repay the mortgage;
- At the closing, the defendant was not represented by an attorney and was rushed by plaintiff's attorney to sign the loan document;
- The defendant was not informed until the last minute that, as a condition of credit, she was required to pay one year's interest in advance and there was an absence of meaningful choice on the part of the defendant; and
- In addition, the court found that the contract was substantively unconscionable, because it contained a large balloon payment that the borrower had no means of paying, and that the borrower had no reasonable opportunity to understand the terms of the contract. *Family Fin. Servc. V. Pencer*, 677 A.2d 479, (Conn. Ct. App. 1996); and *Emigrant Mortg., Co., Inc., v. D'Angostino*, 896 A.2d 814 (Conn. Ap. Ct. 2006).

## 2.  HOLDER IN DUE COURSE

(a)  Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if:

(2)  the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).

## § 3-305. DEFENSES AND CLAIMS OF RECOUPMENT.

(a)  Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1)  a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(b)  Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument.  An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

## § 3-305. TRANSFER OF INSTRUMENT: RIGHTS ACQUIRED BY TRANSFER

(c)  Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a

transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

## Case Law

*Pacific Concrete F.C.U. V.Kauanoe,* 62 Haw. 334,614 P.2d936 (1980),

*GE Capital Hawaii, Inc. v. Yonenaka,* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001),

*Fooks v. Norwich Housing Authority,* 28 Conn. L. Rptr. 371, (Conn. Super.2000), and *Town of Brookfield v. Candlewood Shores Estates, Inc.* 513 A.2d 1218, 201 Conn. (1986).

*Solon v. Godbole,* 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

*Staff Mortgage. & Inv. Corp.,* 550 F.2d 1228 (9th Cir 1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee.

## ARTICLE 3
### PREDATORY LENDING DATABASE

(Source: P.A. 94-280, eff. 1-1-06)

(765 ILCS 77/70)
Sec. 70. Predatory lending database program.
(a)   As used in this article.
"Adjustable rate mortgage" or "ARM" means a closed-end mortgage transaction
That allows adjustments of the loan interest rate during the first 3 years of the loan
term.
"Borrower" means a person seeking a mortgage loan.
"Broker" means a "broker" or "loan broker", as defined in subsection (p) of Section 1-4
of the *Residential Mortgage License Act of 1987.*
"Closing agent" means an individual assigned by a title insurance company or a
broker or originator to ensure that the execution of documents related to the closing
of a real estate sale or the refinancing of a real estate loan and the disbursement of
closing funds are in conformity with the instructions of the entity financing the
transaction.
"Counseling" means in-person counseling provided by a counselor employed by a
HUD-certified counseling agency to all borrowers, or documented telephone counseling
where a hardship would be imposed on one or more borrowers.  A hardship shall exist
in instances in which the borrower is confined to his or her home due to medical
conditions, as verified in writing by a physician, or the borrower resides 50 miles or
more from the nearest HUD-certified housing counseling agency.  In instances of
telephone counseling, the borrower must supply all necessary documents to the
counselor at least 72 hours prior to the scheduled telephone counseling session.
"Counselor" means a counselor employed by a HUD-certified housing counseling
agency.
"Credit Score" means a credit risk score as defined by the Fair Isaac Corporation

or its successor, and reported under such names as "BEACON", "EMPIRICA", and "FAIR ISAAC RISK SCORE" by one or more of the following credit reporting agencies or their successors: Equifax, Inc., Experian Information Solutions, Inc., and TransUnion LLC.  If the borrower's credit report contains credit scores from 3 reporting agencies, then the broker or loan originator shall report the middle score.

  "Department" means the Department of Financial and Professional Regulation.

  "Exempt Person" means that term as it is defined in subsections (d)(1) and (d)(1.5)

  "First-time homebuyer" means a borrower who has not held an ownership interest in residential property.

  "HUD-certified counseling" or "counseling" means counseling given go a borrower by a counselor employed by a HUD-certified housing counseling agency.

  "Interest only" means a closed-end loan that permits one or more payments of interest without any reduction of the principal balance of the loan, other than the first payment on the loan.

  "Lender" means that term as it is defined in subsection (g) of Section 1-4 of the Residential Mortgage License Act of 1987.

  "Licensee" means that term as it is defined in subsection (e) of Section 1-4 of the Residential Mortgage License Act of 1987.
of the Residential Mortgage License Act of 1987.

  "Negative amortization" means an amortization method under which the outstanding balance may increase at any time over the course of the loan because the regular periodic payment does not cover the full amount of interest due.

  "Originator" means a "loan originator" as defined in subsection (hh) of Section 1-4 of the Residential Mortgage License Act of 1987, except an exempt person.

  "Points and fees" has the meaning ascribed to that term in Section 10 of the High Risk Home Loan Act.

  "Prepayment penalty" means a charge imposed by a lender under a mortgage note or rider when the loan is paid before the expiration of the term of the loan.

  "Refinancing" means a loan secured by the borrower's or borrower's primary residence where the proceeds are not used as purchase money for the residence.

  "Title insurance company" means any domestic company organized under the laws of this State for the purpose of conducting the business of guaranteeing or insuring title to real estate and any title insurance company organized under the laws of another State, the District of Columbia, or a foreign government and organized to transact the business of guaranteeing or insuring title to real estate in this State.

  (a-5) A predatory lending database program shall be established within Cook County.  The program shall be administered in accordance with this Article.  The inception date of the program shall be July 1, 2008.  A predatory lending database shall be expanded to include Kane, Peoria, and Will counties.  The inception date of the expansion of the program shall be Juy2, 2010.  Until the inception date, none of the duties, obligations, contingencies, or consequences of or from the program shall be imposed.  The program shall apply to all mortgage applications that are governed by this Article and that are made or taken on or after the inception of the program.

  (b) The database created under this program shall be maintained and administered by the Department.  The database shall be designed to allow brokers, originators, counselors, title insurance companies, and closing agents to submit information to the database online.  The database shall not be designed to allow those entities to retrieve information from the database, except as otherwise provided in this Article.  Information submitted by the broker or originator to the Department may be used to populate the online form submitted by a counselor, title insurance company, or closing agent.

  (c) Within 10 days after taking a mortgage application, the broker or originator for any mortgage on residential property within the program area must submit to the predatory lending database all of the information required under Section 72 and any other information required by the Department by rule.  Within 7 days after

23

receipt of the information, the Department shall compare that information to the housing counseling standards in Section 73 and issue to the borrower and the broker or originator a determination of whether counseling is recommended for the borrower.  The borrower may not waive counseling.  If at any time after submitting the information required unde4r Section 72 and, within 4 days after receipt of the information re-submitted by the broker or originator, the Department shall compare that information to the housing counseling standards in Section 73 and shall issue to the borrower and the broker or originator a new determination of whether re-counseling for the borrower is recommended for the borrower based on the information re-submitted by the broker or originator. The Department shall require re-counseling if the loan terms have been modified to meet another counseling standard in Section 73, or if the broker has increased the interest rate by more than 200 basis points.

(d) If the Department recommends counseling for the borrower under subsection (c), then the Department shall notify the borrower of all participating HUD-certified counseling agencies located within the State and direct the borrower to interview with a counselor associated with one of those agencies. Within 10 days after receipt of the notice of HUD-certified counseling agencies, the borrower shall select one of those agencies and shall engage in an interview with a counselor associated with that agency.  Within 7 days after interviewing the borrower, the counselor must submit to the predatory lending database all of the information required under Section 74 and any other information required by the Department by rule.  Reasonable and customary costs not to exceed $300 associated with counseling provided under the program shall be paid by the broker or originator.  The department shall annually calculate to the nearest dollar an adjusted rate for inflation.  A counselor shall not recommend or suggest that a borrower contact any specific mortgage origination company, financial institution, or entity that deals in mortgage finance to obtain a loan, another quote, or for any other reason related to the specific mortgage transaction; however, a counselor may suggest that the borrower seek an opinion or a quote from another mortgage origination company, financial institution, or entity that deals in mortgage finance.  A counselor or housing counseling agency that in good faith provides counseling shall not be liable to a broker or originator or borrower for civil damages, except for willful or wanton misconduct on the part of the counselor in providing the counseling.

(e) The broker or originator and the borrower may not take any legally binding action concerning the loan transaction until the later of the following:
(1) the Department issues a determination not to recommend HUD-certified counseling for the borrower in accordance with subsection (c); or
(2) the Department issues a determination that HUD-certified counseling is recommended for the borrower and the counselor submits all required information to the data base accordance with subsection (d).

(f) Within 10 days after closing the tile insurance company or closing agent must submit to the predatory lending database all of the information required under Section 76 and any other information required by the Department by the rule.

(g) The title insurance company or closing agent shall attach to the mortgage a certificate of compliance with the requirements of this Article, as generated the certificate of compliance, then the mortgage is not recordable.  In addition, if any lis pendens for a residential mortgage foreclosure is recorded on the property within the program are, a certificate of service must be simultaneously recorded that affirms that a copy of the lis pendens was filed with the Department.  If the certificate of service is not recorded, then the lis pendens pertaining to the residential mortgage foreclosure in question is not recordable and is of no force and effect.

(h) All information provided to the predatory lending database under the program is confidential and is not subject to disclosure under the Freedom of Information Act, except as otherwise provided in this Article.  Information

or documents obtained by employees of the Department in the course of maintaining and administering the predatory lending database are deemed confidential.  Employees are prohibited from making disclosure of such confidential information or documents.  Any request for production of information from the predatory lending database, whether by subpoena, notice, or any other source, shall be referred to the Department of Financial and Professional Regulation.  Any borrower may authorize in writing the release of database information.  The Department may use the information in the database without consent of the borrower: (i) for the purposes of administering and enforcing the program; (ii) to provide relevant information to a counselor providing counseling to a borrower under the program; or (iii) to the appropriate law enforcement agency or the applicable administrative agency if the database information demonstrates criminal, fraudulent, or otherwise illegal activity.

(i) Nothing in this Article is intended to prevent a borrower from making his or her own decision as to whether to proceed with a transaction.

(j) Any person who violates any provision of this Article commits an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act.

(k) During the existence of the program, the Department shall submit semi-annual reports to the Governor and to the General Assembly by May 1 and November 1 of each year detailing its findings regarding the program. The report shall include, by county, at least the following information for each reporting period:

>    (1) *the number of loans registered with the program;*
>    (2) the number of borrowers receiving counseling;
>    (3) the number of loans closed;
>    (4) the number of loans requiring counseling for each of the standards set forth in Section 73;
>    (5) the number of loans requiring counseling where the mortgage originator changed the loan terms subsequent to counseling;
>    (6) the number of licensed mortgage brokers and loan originators entering information into the database;
>    (7) the number of investigations based on information obtained from the database, including the number of licensees fined, the number of licenses suspended, and the number of licenses revoked;
>    (8) a summary of the types of non-traditional mortgage products being offered; and
>    (9) a summary of how the Department is actively utilizing the program to combat mortgage fraud.

(Source: P.A. 95-69, eff. 6-1-08; 96-328, eff. 8-11-09, 96-856, eff. 12-31-09)

(765 ILCS 77/72)
Sec. 72. Originator; required information.  As part of the predatory lending database program, the broke4r or originator must submit all of the following information for inclusion in the predatory lending database for each loan for which the originator takes an application.

>    (1) The borrower's name, address, social security number or taxpayer identification number, date of birth, and income and expense information contained in the mortgage application.
>    (2) The address, permanent index number, and a description of the collateral and information about the loan or loans being applied for and the loan terms, including the amount of the loan, the rate and whether the rate is fixed or adjustable, amortization or loan period terms, and any other material terms.

25

(3) The borrower's credit score at the time of application.

(4) Information about the originator and the company the originator works for, including the originator's license number and address, fees being charged, whether the fees are being charged as points up front, the yield spread premium payable outside closing, and other charges made or remuneration required by the broker or originator or its affiliates or the broker's or originator's employer or its affiliates for the mortgage loans.

(5) Information about affiliated or third party service providers, including closing agents, attorneys, and realtors who are involved with the transaction and the broker originator and any moneys received from the broker or originator in connection with the transaction.

(6) All information indicated on the Good Faith Estimate and Truth in Lending statement disclosures given to the borrower by the broker or originator.

(7) Annual real estate taxes for the property, together with any assessments payable in connection with the property to be secured by the collateral and the proposed monthly principal and interest charge of all loans to be taken by the borrower and secured by the property of the borrower.

(8) Information concerning how the broker or originator obtained the client and the name of its referral source, if any.

(9) Information concerning the notices provided by the broker or originator to the borrower as required by law and the date those notices were given.

(10) Information concerning whether a sale and leaseback is contemplated and the names of the lessor and lessee, seller, and purchaser.

(11) Any and all financing by the borrower for the subject property within 12 months prior to the date of application.

(12) Loan information, including interest rate, term, purchase price, down payment, and closing costs.

(13) Whether the buyer is a first-time homebuyer or refinancing a primary residence.

(14) Whether the loan permits interest only payments.

(15) Whether the loan may result in negative amortization.

(16) Whether the total points and fees payable by the borrowers at or before closing will exceed 5%.

(17) Whether the loan includes a prepayment penalty, and, if so, the terms of the penalty.

(18) Whether the loan is an ARM.

(Source: P.A. 94-280, eff. 1-1-06; 95-691, eff. 6-1-08)


(765 ILCS 77/73)

Sec. 73. Standards for counseling. A borrower or borrowers subject to this Article shall be recommended for counseling if, after reviewing the information in the predatory lending database submitted under Section 72, the Department finds the borrower or borrowers are all first-time homebuyers or refinancing a primary residence4 and the loan is a mortgage that includes one or more of the following.

(1) the loan permits interest only payments;

(2) the loan may result in negative amortization;

(3) the total points and fees payable by the borrower at or before closing will exceed 5%;

(4) the loan includes a prepayment penalty; or

(5) the loan is an ARM.

(Source: P.A. 95-691, eff. 6-1-08)

(765 ILCS 77/74)

Sec. 74 Counselor; required information.  As part of the predatory lending database program, a counselor must submit all of the following information for Inclusion in the predatory lending database:

    (1) The information called for in items (1), (6), (9), (11), (12), (13), (14), (15, (16), (17), and (18) of Section 72.

    (2) Any information from the borrower that confirms or contradicts the information called for under item (1) of the Section.

    (3) The name of the counselor and address of the HUD-certified housing counseling agency that employs the counselor.

    (4) Information pertaining to the borrower's monthly expenses that assists the counselor in determining whether the borrower can afford the loans or loan for which the borrower is applying.

    (5) A list of the disclosures furnished to the borrower as seen and reviewed by the counselor, and a comparison of that list to all disclosures required by law.

    (6) Whether the borrower provided tax returns to the broker or originator or to the counselor, and, if so, who prepared the tax returns.

    (7) A statement of recommendations of the counselor that indicates the counselor's response to each of the following statements:

        (A) The loan should not be approved due to indicia of fraud.

        (B) The loan should be approved; no material problems noted.

        (C) The borrower cannot afford the loan.

        (D) The borrower does not understand the transaction.

        (E) The borrower does not understand the costs associated with the transaction.

        (F) The borrower's monthly income and expenses have been Reviewed and disclosed.

        (G) The rate of the loan is above market rate.

        (H) The borrower should seek a competitive bid from another broker or originator.

        (I) There are discrepancies between the borrower's verbal understanding and the originator's completed form.

        (J) The borrower is precipitously close to not being able to afford the loan.

        (K) The borrower understands the true cost of debt consolidation and the need for credit card discipline.

        (L) The information that the borrower provided the originator has been amended by the originator.

(Source: P.A. 94-280, eff. 1-1-06; 95-691, eff. 6-1-08.)

(765 ILCS 77/76)

Sec. 76.  Title insurance company or closing agent; required information.  As part of the predatory lending database pilot program, a title insurance company or closing agent must submit all of the following information for inclusion in the predatory lending database.

    (1) The borrower's name, address, social security number or taxpayer identification number, date of birth, and income and expense information contained in the mortgage application.

    (2) The address, permanent index number, and a description of the collateral and information about the loan or loans being applied for and the loan terms, including the amount of the loan, the rate and whether the rate is fixed or adjustable, amortization or loan period terms, and any other material terms.

    (3) Annual real estate taxes for the property, together with any assessments payable in connection with the property to be secured by the collateral and the proposed monthly principal and interest and interest charge

of all loans to be taken by the borrower and secured by the property of the borrower as well as any required escrows and the amounts paid monthly for those escrows.

(4) All itemizations and descriptions set forth in the RESPA settlement statement including items to be disbursed, payable outside closing "POC" items noted on the statement, and a list of payees and the amounts of their checks.

(5) The name and license number of the title insurance company or closing agent together with the name of the agent actually conducting the closing.

(6) The names and addresses of all originators, brokers, appraisers, sales Persons, attorneys, and surveyors that are present at the closing.

(7) The date of closing, a detailed list of all notices provided to the borrower at closing and the date of those notices, and all information indicated on the Truth in Lending statement and Good Faith Estimate disclosures.

(Source: P.A. 94-280, eff. 1-1-06.)


(765 ILCS 77/78)

Sec. 78. Exemption. Borrowers applying for reverse mortgage financing of residential real estate including under programs regulated by the Federal Housing Authority (FHA) require HUD-certified counseling are exempt from the program and may submit a HUD counseling certificate to comply with the program.

(Source: P.A. 95-691, eff. 6-1-08.)


(765 ILCS 77/80)

Sec. 80. Predatory Lending Database Program Fund. The Predatory Lending Database Program Fund is created as a special fund in the State treasury. Subject to appropriation, moneys in the Fund shall be appropriated to the Illinois Housing Development Authority for the purpose of making grants for HUD-certified counseling agencies participating in the Predatory Lending Database Program to assist with implementation and development of the Predatory Lending Database Program.

(Source: P.A. 95-707, eff. 1-11-08.)


(765 ILCS 77/Art. 4 heading)

ARTICLE 4
EFFECTIVE DATE

(Source: P.A. 94-280, eff. 1-1-06.)


(765 ILCS 77/99)

Sec. 99. This Act take effect on October 1, 1994.

(Source: P.A. 88-111.)